IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TELLABS OPERATIONS, INC. <br><br> PLAINTIFF, <br><br> v. <br><br> FUJITSU LIMITED AND FUJITSU NETWORK COMMUNICATIONS, INC., <br> DEFENDANTS | CIVIL ACTION NO. 08-CV-3379 <br> CIVIL ACTION NO. 1:09-CV-04530 <br><br><br> JUDGE HOLDERMAN <br> MAGISTRATE JUDGE COLE |
| FUJITSU LIMITED <br> Plaintiff, <br><br> vs. <br><br> TELLABS OPERATIONS, INC. ET AL. <br> Defendants, | JURY TRIAL DEMANDED <br><br> Consolidated for Discovery |

## PLAINTIFF TELLABS OPERATIONS, INC'S MOTION AND MEMORANDUM IN SUPPORT OF ITS MOTION FOR RECONSIDERATION

Plaintiff Tellabs Operations, Inc. ("Tellabs") respectfully submits this memorandum in support of its motion for reconsideration of part of the Court's Claim Construction Order dated September 29, 2011. For the reasons set out in this Memorandum, the Court should reconsider its construction of the term "optical line interface," in light of "bidirectional optical line interface," and the term "optical demultiplexer" for U.S. Patent No. 7,369,772 (the '772 Patent).

Although both parties generally briefed both terms, and the Court construed both terms, the Court's Claim Construction Order raises additional issues that neither party had an adequate opportunity to brief. Because "bidirectional optical line interface" no longer appears in any claims within the '772 Patent, the Court rejected Tellabs' requests to construe "optical line

interface" in light of the term "bidirectional optical line interface."[1]  However, the resulting

Claim Construction Order has now alerted Tellabs to provide the Court with Federal Circuit legal

authority explaining that the Court should, in fact, construe "optical line interface" in light of the

term "bidirectional optical line interface."   In addition, the Claim Construction Order does not

necessarily include specific embodiments of the "optical demultiplexer" disclosed, for example,

in each of the book, *Optical Networks*, by co-inventor Dr. Rajiv Ramaswami, and a 1996 article

by co-inventor Dr. Ornan Gerstel (discussed below).[2]  This apparent lack of inclusion has now

alerted Tellabs to provide the Court with legal authority explaining that the Court should

construe "optical demultiplexer" to necessarily include the specific embodiments described in

the inventors' works.  Tellabs hereby requests the Court to reconsider its claim constructions of

the above two terms and, based on the legal authority provided below, reinstate the Court's

Preliminary Constructions.[3]

## I.     THE COURT SHOULD RECONSIDER ITS CONSTRUCTION OF "OPTICAL LINE INTERFACE" IN LIGHT OF THE TERM "BIDIRECTIONAL OPTICAL LINE INTERFACE"

Initially, both parties briefed the terms "optical line interface" and "bidirectional optical

line interface."  However, before the Court issued its Claim Construction Order, Tellabs canceled

claims 14-16 of the '772 Patent in connection with the ongoing reexamination of the '772 Patent

in the U.S. Patent and Trademark Office.  These cancellations relieved the Court of having to

construe "bidirectional optical line interface" in the context of claims 14-16 of the '772 Patent.[4]

However, the Court went on to state that "the court's references to the claims in which certain

---

[1] Memorandum Opinion and Order at 16–20, 26–31 (Sept. 29, 2011) (Doc. No. 427) ("Claim Construction Order").
[2] *Id.* at 16–26.
[3] *See* Memorandum Opinion and Order Preliminarily Construing Certain Disputed Claim Terms Based on the Intrinsic Evidence at 10–26, 39 (May 13, 2009) (Doc. No. 145) ("Preliminary Construction Order").
[4] *See* Claim Construction Order at n.4.

claim terms appear only include those claims that currently remain pending."[5]  Thus, the Court

held that Tellabs' arguments, that "optical line interface" should be construed in light of the term

"bidirectional optical line interface," based on the doctrine of claim differentiation, lacked

merit.[6]

## A.    Claim Differentiation Still Applies to Terms in Live Claims Even Though Other Claims Have Been Canceled.

Tellabs re-urges the Court to apply the doctrine of claim differentiation to construe

"optical line interface" in light of the term "bidirectional optical line interface."  As a basis for

this request, Tellabs directs the Court's attention to the Federal Circuit's *CAE Screenplates v.*

*Heinrich Fiedler* opinion, described in more detail below in Part B.

When the ordinary meaning of a claim is not readily apparent, the Court must consult the

specification as well as the prosecution history to construe the claim terms.[7]  However, the

intrinsic evidence and the evidence of record in this case do not support the Court's position that

"optical line interface" and "bidirectional optical line interface" do not have an ordinary

meaning.  For example, while the Court references the testimony of co-inventor Dr. Ramaswami,

the Court incorrectly equates "not commonly used" with having no "ordinary meaning."[8]

Simply because each of us have many terms in our vocabularies that we do not commonly use

does not mean that these terms do not have an ordinary meaning, i.e., frequency of use does not

have a bearing on meaning.

Based upon the faulty premise that infrequently used terms necessarily have no ordinary

meaning, the Court quickly turned to the specification of the '772 Patent.  However, *Phillips*

---

[5] *Id.*
[6] *Id.* at n.7.
[7] *Phillips v. AWH Corp.*, 415 F.3d 1303, 1317 (Fed. Cir. 2005) (en banc).
[8] *See* Claim Construction Order at 27.

reminds courts to avoid importing limitations into the claims during construction.[9]  "For

instance, although the specification often describes very specific embodiments of the invention,

we have repeatedly warned against confining the claims to those embodiments."[10]  The intrinsic

record includes the claims, specification, prosecution history, and the cited references.[11]  The

prosecution history "consists of <u>the complete record of the proceedings before the PTO</u> and

includes the prior art cited during the examination of the patent."[12]  As is the case here, "a court

may look to incomplete reexamination proceedings during claim construction."[13]  The complete

record before the PTO, therefore, naturally includes any and all claims that were ever included

during the prosecution history, even if those claims were eventually canceled.

"Differences among claims can also be a useful guide in understanding the meaning of

particular claim terms."[14]  Specifically, "the presence of a dependent claim that adds a particular

limitation gives rise to a presumption that the limitation in question is not present in the

independent claim."[15]  Citing the Federal Circuit's *CAE Screenplates* opinion, the district court

for the Northern District of Illinois previously recognized in another case that "[i]n the absence

of any evidence to the contrary, we must presume that the use of [] different terms in the claims

connotes different meanings."[16]

---

[9] *Phillips,* 415 F.3d at 1323.

[10] *Id.*

[11] *Id.* at 1317; *V-Formation, Inc. v. Benetton Group SpA*, 401 F.3d 1307, 1310–11 (Fed. Cir. 2005) ("prior art cited in a patent or cited in the prosecution history of the patent constitutes intrinsic evidence").

[12] *Phillips*, 415 F.3d at 1317 (emphasis added).

[13] *P&G v. Kraft Foods, Inc.*, 549 F.3d 842, 849 (Fed. Cir. 2008) ("[A] stay should ordinarily not be granted unless there is a substantial patentability issue raised in the inter partes reexamination proceeding.").

[14] *Phillips*, 415 F.3d at 1314.

[15] *Id.* at 1314–15.

[16] *Civix-DDI, LLC v. Hotels.Com GP LLC*, 2010 U.S. Dist. LEXIS 116373, *39–40 (N.D. Ill. Oct. 25, 2010) (quoting *CAE Screenplates, Inc. v. Heinrich Fiedler GmbH & Co. K.G.*, 224 F.3d 1308, 1317 (Fed. Cir. 2000)).

**B.      The Federal Circuit's *CAE Screenplates* Applied Claim Differentiation Based Upon Canceled Claims.**

In *CAE Screenplates*, the Federal Circuit applied this rule of claim differentiation based upon <u>claims that were canceled during prosecution</u>.[17]  In order to construe the term "bottom plane" in the claim at issue, the Federal Circuit recognized that "bottom plane" appeared previously in a canceled claim that depended from a canceled independent claim, which contained the term "bottom" (referring to a particular part of a groove).[18]  However, the term "bottom" by itself was not present in any of the issued claims.[19]  Thus, the court focused on these canceled claims to construe "bottom plane" more narrowly in light of "bottom" and thus define "bottom plane" to be a specific portion of the "bottom" of a groove in the patented invention.[20]  Likewise, Tellabs submits that this Court should construe "optical line interface" more broadly in light of "bidirectional optical line interface," which is found among the canceled '772 Patent claims.

Similarly, another court looked to a canceled dependent claim in order to construe an issued independent claim.[21]  In *International Automated v. Digital Persona*, the parties disagreed about whether the functions of image quality determination and enhancement were included in the method claims of the patent-in-suit.[22]  The court held, however, that the enhancement function had previously been included in a dependent claim that the patentee canceled before the patent-in-suit issued.[23]  As a result, in construing the terms of the surviving claims, the court held

---

[17] *CAE Screenplates*, 224 F.3d at 1317.
[18] *Id.*
[19] *Id.*
[20] *Id.*
[21] *See Int'l Automated Sys., Inc. v. Digital Persona, Inc.*, 565 F. Supp.2d 1276 (D. Utah 2008).
[22] *Id.* at 1302.
[23] *Id.* at 1303.

that "that [canceled] claim indicates the correct scope of the claims upon which it depended."[24] Tellabs respectfully submits that these cases are directly on point, and the Court should follow the Federal Circuit and other courts' precedent of using the language in canceled claims to construe the claim terms at issue.

## C.     Applying the Doctrine of Claim Differentiation

The Court was correct to look to the specification and the intrinsic and extrinsic records. However, Tellabs asserts that the Court should construe "optical line interface" based additionally on the following pieces of intrinsic evidence: the canceled dependent claims of the '772 Patent as well as the claims that issued and remain in force in its parent, U.S. Patent No. 6,721,508.[25]

As discussed above, *CAE Screenplates* and *International Automated* explain that courts can and should apply the doctrine of claim differentiation to construe claim terms based upon terms that appeared within canceled claims. Thus, Tellabs requests that the Court reconsider its current claim construction with appreciation of the two different meanings of "optical line interface" and "bidirectional optical line interface" as they appear in the '772 Patent before claims 14-16 were canceled. Because Tellabs made no arguments, amendments, or statements during prosecution or reexamination that would otherwise affect the meaning of the claim terms at issue in this Memorandum, the meaning of the terms in the '772 Patent should be identical to the meaning of those very same claim terms at the time the '772 Patent first issued on May 6, 2008.

---

[24] *Id.*

[25] U.S. Patent No. 6,721,508 is helpful for claim construction purposes in that its claim language differentiates between a general "optical line" (*see* claim 1) and one having "bidirectional" properties (*see* claim 2 that depends from claim 1). *See Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1334 (Fed. Cir. 2003) ("We presume, unless otherwise compelled, that the same claim term in the same patent or related patents carries the same construed meaning.").

Tellabs respectfully submits that the Court's Claim Construction Order provides a definition that is more befitting of the term "bidirectional optical line interface" than "optical line interface."[26] If the Court agrees, then Tellabs proposes that the Court apply the doctrine of claim differentiation in light of *CAE Screenplates* and *International Automated* to construe "optical line interface."[27]

To avoid any claim construction that would have the effect of rendering claim language "redundant and superfluous,"[28] this Court should construe "optical line interface" to have a broader interpretation than "bidirectional optical line interface." Without the limitation of being bidirectional, "optical line interface" represents "[a]n interface that can carry a plurality of wavelengths multiplexed together as an optical signal."[29] That is, Tellabs submits that the Court's preliminary construction of "optical line interface" should be reinstated.

As further support for the Court's preliminary construction, Tellabs urges the Court to consider all of the co-inventors' testimony. For example, Dr. Ramaswami, under questioning by Fujitsu's counsel, testified that an optical line interface "carries a WDM signal."[30] In contrast, under the Court's revised construction, the optical line interface would carry two WDM signals, not just "a" or "one" WDM signal. During subsequent questioning by Fujitsu's counsel, Dr. Ramaswami testified that a "bidirectional optical line interface" would mean "one of two things: either carrying multiple wavelengths on -- in both directions on the same fiber or having a fiber

---

[26] *See* Claim Construction Order at 31 ("the court construes 'optical line interface' to mean 'an interface adapted for transmitting/receiving wavelength division multiplexed optical communication signals on a single optical fiber (where "transmitting/receiving" means "transmitting and receiving").'").

[27] *See Int'l Automated*, 565 F. Supp.2d at 1302 (applying the doctrine of claim differentiation to avoid rendering the canceled claim "redundant and superfluous").

[28] *See id.*

[29] Preliminary Construction Order at 13 at 26–27 (the court's preliminary construction of "optical line interface").

[30] Ramaswami Dep. 151:14-15 (emphasis added). Attached as Exhibit 3 to the Declaration of Benjamin Kelly.

pair that carries all the wavelengths."[31]  Thus, Dr. Ramaswami clearly understood there to be a

difference between "optical line interface" and "bidirectional optical line interface."  Dr. Ornan

Gerstel likewise provided testimony that supports the Court's preliminary constructions for

"optical line interface" and "bidirectional optical line interface" and the distinctions

therebetween.  For example, when questioned by Fujitsu's counsel regarding a figure in an

article written by Dr. Gerstel in 1996, [32] he identified an interface carrying an optical signal in

one direction as an optical line interface.[33]  Dr. Gerstel's subsequent testimony further reflects a

difference between the terms as he noted that a "bi-directional optical interface is a subset of an

optical line interface."[34]  Thus, while the Court relies upon the inventors' testimony, it should

rely upon all of it, thereby resulting in constructions that are consistent with all of this testimony,

not just portions of it.

## II.     THE COURT SHOULD RECONSIDER ITS CONSTRUCTION OF "OPTICAL DEMULTIPLEXER" IN LIGHT OF THE INTRINSIC RECORD

Initially, both parties briefed their proposed constructions of "optical demultiplexer."

The Court looked to the claims, specification, and other parts of the intrinsic record to define this

term.[35]  Included within the intrinsic record is co-inventor Dr. Ramaswami's book, *Optical

Networks*.[36]  "The parties agree that *Optical Networks* reflects the understanding of a person of

ordinary skill at the time of the invention."[37]  However, Tellabs respectfully disagrees with the

Court's construction of "optical demultiplexer" insofar that the construction does not include a

---

[31] *Id*. at 277:24 – 278:5.
[32] Exhibit 214 to the Gerstel deposition: O. Gerstel, *On the Future of Wavelength Routing Networks*, IEEE Network, 14–20 (November/December 1996) ("*Future of Wavelength Routing*").  Attached as Exhibit 2 to the Declaration of Benjamin Kelly.
[33] Gerstel Dep. 166:11-18.  Attached as Exhibit 1 to the Declaration of Benjamin Kelly.
[34] *Id*. at 237:14-23.
[35] Claim Construction Order at 23.
[36] *Id.* (citing Fujitsu's Op. Br. 39; Tellabs's Resp. 25); *see Optical Networks* section 3.3.
[37] *Id.*

specific embodiment disclosed in this intrinsic evidence. Thus, Tellabs requests that the Court

reinstate its Preliminary Construction for "optical demultiplexer."[38]

## A. The Court's Construction of "Optical Demultiplexers" Imports the Requirement of Waveguide Inputs and Outputs.

During claim construction, courts "normally do not interpret claim terms in a way that

excludes embodiments disclosed in the specification."[39] The reason for this – under the premise

that the inventor has a robust understanding of his or her own invention – is that "it is unlikely

that an inventor would define the invention in a way that excluded the preferred embodiment, or

that persons of skill in the field would read the specification in such a way."[40] However, by not

including the specific embodiment of a grating from the construction of an "optical

demultiplexer," the Claim Construction Order as it stands runs contrary to the co-inventors' own

understanding of an optical demultiplexer as laid out in both *Optical Networks* and *Future of*

*Wavelength Routing*.[41]

In its Claim Construction Order, the Court notes that *Optical Networks* provides evidence

of "at least one embodiment of an optical demultiplexer that employs waveguides, not optical

fibers, for coupling optical signals to and from the optical demultiplexer."[42] However, Tellabs

respectfully submits that the Court should similarly consider embodiments from *Optical*

*Networks* and *Future of Wavelength Routing* to refute Fujitsu's attempt to import any limitation

that an "optical demultiplexer" necessarily includes input and output constraints.

---

[38] Claim Construction Order at 21 ("a device that receives a plurality of wavelengths multiplexed together as an optical signal and outputs each of the plurality of wavelengths as at least one of the following: (a) individual wavelengths, (b) bands of wavelengths or (c) a combination of bands and individual wavelengths.").
[39] *Oatey Co. v. IPS Corp.*, 514 F.3d 1271, 1276–77 (Fed. Cir. 2008).
[40] *Dow Chem. Co. v. Sumitomo Chem. Co., Ltd.*, 257 F.3d 1364, 1378 (Fed. Cir. 2001).
[41] *Optical Networks* at 93–95, *Future of Wavelength Routing* at 16.
[42] Claim Construction Order at 24 (quoting Tellabs' Resp. at 25 (emphasis added by the Court)).

**B.      By Importing Input/Output Constraints, the Specific Embodiment of a Grating Described by the Co-Inventors Is Not Included in the Court's Construction.**

As explained, the Court already used one embodiment in *Optical Networks* to refute the idea that "optical demultiplexers" necessarily require optical fibers at the inputs and outputs. The Court should likewise consider another embodiment from this intrinsic evidence that demonstrates no requirement of any input or output constraints.  Specifically, section 3.3.1 of *Optical Networks* entitled "Gratings" explains that "[i]n WDM [wavelength division multiplexed] communication systems, gratings are used as demultiplexers to separate the individual wavelengths."[43]  The statement defines a grating as a type or an embodiment of a demultiplexer while proposing no input or output constraints.  In fact, Figure 3.8 (below) in *Optical Networks* further supports that gratings, a type of demultiplexer, have no input or output constraints.[44]  The diagrams below show individual or bands of wavelengths of light interacting with a grating; however, the diagrams display no constraint regarding how the light arrives or departs.

---

[43] *Optical Networks* at 93–94 (emphasis added).
[44] *Id.*



**Figure 3.8**    (a) A transmission grating and (b) a reflection grating.

Thus, the existence of any input or output limitations, <u>such as waveguides</u>, should have no

bearing on whether the object is a grating, and thus no bearing on whether it is a demultiplexer.[45]

     Co-inventor Dr. Gerstel likewise provides support for the inclusion of a grating, without

input or output limitations, within the definition of an optical demultiplexer.  As reflected in

Figure 3 (below) of *Future of Wavelength Routing*, a 1996 article by Dr. Gerstel raised by

Fujitsu's counsel at his deposition, an optical multiplexer is annotated with the label "Grating."[46]

The same page as Figure 3 of *Future of Wavelength Routing* recites, "When the signal gets to the

other end of the fiber it is split by an optical demultiplexer, which acts like a prism, to separate

wavelength-specific optical signals (the same <u>grating</u> could be used again)."[47]

---

[45] *Id.* at 94.
[46] *Future of Wavelength Routing* at 16.
[47] *Id.* (emphasis added).



Figure 3. *A WDM link.*

Because these prior art references authored by the co-inventors of the '772 Patent reflect the understanding of the inventors at the time of the invention as well as the ordinary meaning of the term, Tellabs requests that the Court reinstate its Preliminary Construction for "optical demultiplexer."

## III. CONCLUSION

For the foregoing reasons, the Court should reconsider its September 29 Order construing "optical line interface" and "optical demultiplexer" for the '772 Patent's claims. Tellabs respectfully submits that the most appropriate constructions for these claim terms are the Court's Preliminary Constructions. This is because, for the term "optical line interface," Tellabs did not have the opportunity or need until now to submit legal authority as to why the Court should apply the doctrine of claim differentiation in light of the term "bidirectional optical line interface" as it appears in canceled claims. Also, for the term "optical demultiplexer," Tellabs

did not have the opportunity or need until now to submit legal authority and brief the issue of a claim construction that does not include a specific embodiment from the intrinsic record.

Dated: October 27, 2011                    Respectfully submitted,

                                           /s/ James P. Bradley
                                           David T. Pritikin
                                           Richard A. Cederoth
                                           Richard O'Malley

                                           SIDLEY AUSTIN LLP
                                           One South Dearborn Street
                                           Chicago, Illinois  60603
                                           Telephone:  312.853.7000
                                           Facsimile:  312.853.7036

                                           James P. Bradley (*admitted pro hac vice*)
                                           Texas Bar No. 02826000
                                           Steven C. Malin (*admitted pro hac vice*)
                                           Texas Bar No. 12859750
                                           Mark A. Dodd (*admitted pro hac vice*)
                                           Texas Bar No. 24040815
                                           Kelley A. Conaty (*admitted pro hac vice*)
                                           Texas Bar No. 24040716
                                           Kristoffer B. Leftwich (*admitted pro hac vice*)
                                           Texas Bar No. 24046285
                                           Benjamin B. Kelly (*admitted pro hac vice*)
                                           Texas Bar No. 24055765

                                           SIDLEY AUSTIN LLP
                                           717 North Harwood
                                           Suite 3400
                                           Dallas, Texas 75201
                                           Telephone:  214.981.3300
                                           Facsimile:  214.981.3400

                                           ATTORNEYS FOR
                                           TELLABS OPERATIONS, INC., TELLABS INC.,
                                           AND TELLABS NORTH AMERICA

**C**ERTIFICATE OF **S**ERVICE

I hereby certify that on the 27th day of October, 2011, I caused a copy of the foregoing document to be served on opposing counsel via the Court's ECF system pursuant to Local Rule 5.5(a)(3) and Section X(C) of General Order 09-014 (June 5, 2009) (General Order on Electronic Case Filing).

*/s/      Mark A. Dodd*