**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| TELLABS OPERATIONS, INC. <br><br> PLAINTIFF, <br><br> V. <br><br> FUJITSU LIMITED AND FUJITSU NETWORK COMMUNICATIONS, INC., <br><br> DEFENDANTS | CIVIL ACTION NO. 08-CV-3379 <br><br> CIVIL ACTION NO. 1:09-CV-04530 <br><br><br> **JUDGE HOLDERMAN** <br> **MAGISTRATE JUDGE COLE** <br><br> JURY TRIAL DEMANDED |

**PLAINTIFF TELLABS OPERATIONS, INC.'S
<u>REPLY IN SUPPORT OF ITS MOTION FOR RECONSIDERATION</u>**

**ORAL ARGUMENT REQUESTED.**

Tellabs' Motion is properly before this Court as a Motion for Reconsideration. The Motion is necessitated by the May 27, 2011 cancellation of claims 14 – 16 and by this Court's decision not to consider those cancelled claims in its September 29, 2011 *Markman* Order. It is further necessitated by the Court's non-inclusion of specific embodiments of the "optical demultiplexer" disclosed in the intrinsic record of the '772 Patent. Contrary to Fujitsu's arguments, Tellabs did not make these same arguments in its July 2010 *Markman* briefing or December 2010 *Markman* arguments simply because Tellabs had no way of anticipating the need to. At that time, no claims of the '772 Patent had been cancelled and the Court had not issued its Order.

Through its Motion, Tellabs seeks to provide the Court with legal authority pertinent to the construction of "optical line interface" in view of these now cancelled claims and "optical demultiplexer" in view of the disclosed but not considered embodiments. *See, CAE Screenplates, Inc. v. Heinrich Fiedler GmbH & Co. K.G.*, 224 F.3d 1308 (Fed. Cir. 2000). Tellabs asks this Court to reconsider only these two of its claim constructions and reinstate its own corresponding Preliminary Constructions.

**I.     ANY CONSTRUCTION OF "OPTICAL LINE INTERFACE" SHOULD CONSIDER THE SEPARATE AND DISTINCT TERM "BIDIRECTIONAL OPTICAL LINE INTERFACE"**

Based upon the entire intrinsic record of the '772 Patent – including both the current and now cancelled claims – this Court initially construed an "optical line interface" to mean "*an interface that can carry a plurality of wavelengths multiplexed together as an optical signal*" and "bidirectional optical line interface" to mean "*an interface for sending and receiving a plurality of wavelengths multiplexed together as an optical signal*."[1] In its recent claim construction order, the Court determined that, based on the cancellation of claims 14 - 16, claim

---

[1] Memorandum Opinion and Order Preliminarily Construing Certain Disputed Claim Terms Based on the Intrinsic Evidence ("Preliminary Claim Construction") [Dkt. No. 145] at 13, 15.

differentiation principles no longer applied.² The Court therefore conflated the two terms and construed "optical line interface" to mean "*an interface adapted for transmitting/receiving wavelength division multiplexed optical communication signals on a single optical fiber (where 'transmitting/receiving' means 'transmitting and receiving')*."³ Tellabs submits that the Court's original construction was the proper construction of the term "optical line interface," which should contemplate every claim of the '772 Patent – including now cancelled claims 14 – 16.

### A. Cancelled Claims are Properly Considered in a Court's Claim Construction Analysis.

Fujitsu incorrectly argues that the cancelled claims were not in the original application and, therefore, should not be considered. Fujitsu's Response at 8. However, Federal Circuit law provides that the intrinsic record of the '772 Patent includes any and all claims that were <u>ever</u> included during the prosecution history – whether included in the original application, added by amendment during prosecution, or cancelled during reexamination. *See*, *CAE Screenplates,* 224 F.3d at 1317 (considering the use of terms in cancelled claims as part of the claim differentiation analysis); *see also, Int'l Automated Sys., Inc. v. Digital Persona, Inc.*, 565 F. Supp.2d 1276, 1302 (D. Utah 2008). Fujitsu's Response did not and cannot dispute the controlling Federal Circuit authority of *CAE Screenplates*. To not follow this controlling law regarding cancelled claims is "manifest error," sufficient to satisfy the standard for a motion to reconsider. *See, Eazypower Corp. v. Alden Corp.*, 522 F. Supp. 2d 1060, 1063 (N.D. Ill. 2007).

### B. A Court's Construction Should Stay True to the Claim Language.

The Federal Circuit law instructs that "the claims themselves provide substantial guidance as to the meaning of particular claim terms," and the use of different terms in the claims connotes different meanings:

---

² Memorandum Opinion and Order ("Claim Construction Order") [Dkt. No. 427] at 16–20, 26–31.
³ *Id.* at 26 – 27.

**TELLABS' REPLY IN SUPPORT OF ITS MOTION FOR RECONSIDERATION**  2

> Other claims of the patent in question, both asserted and unasserted, can also be valuable sources of enlightenment as to the meaning of a claim term. Because claim terms are normally used consistently throughout the patent, **the usage of a term in one claim can often illuminate the meaning of the same term in other claims. Differences among claims can also be a useful guide in understanding the meaning of particular claim terms.** For example, the presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim.

*Phillips v. AWH Corp.*, 415 F. 3d 1303, 1314 - 1314 (Fed. Cir. 2005) (internal citations omitted, emphasis added); *see also, Civix-DDI, LLC v. Hotels.Com GP LLC*, 2010 U.S. Dist. LEXIS 116373, *39–40 (N.D. Ill. Oct. 25, 2010) (*quoting CAE Screenplates,* 224 F.3d 1308 at 1317). Thus, when one claim is broadly directed to a "ball," for example, and a more specific claim is directed to a "red ball," a court should not construe all claims as being directed specifically to a red ball unless the intrinsic record of the patent explicitly provides for the importation of such a limitation to the broadly drafted claim.[4] Rather, "[t]he construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction." *Renishaw PLC* v. *Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998).

Similarly, claims 1 – 13 and 17 – 24 of the '772 Patent are directed to an "optical line interface," while claims 14 – 16 are more specifically directed to a "bidirectional optical line interface." The differences between these claims should be a guide in understanding the meaning of the terms, and the basic rules of drafting inform us that one is a specific subset of the broader group. Therefore, unless the intrinsic record of the '772 Patent explicitly limits the term "optical line interface" to a "bidirectional optical line interface," this "bidirectional" limitation should not be imported into these broader claims, much as "red" should not be imported into the

---

[4] *See, id.* at 1316 ("[O]ur cases recognize that the specification may reveal a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess. In such cases, the inventor's lexicography governs. In other cases, the specification may reveal an intentional disclaimer, or disavowal, of claim scope by the inventor.")

broader claimed "ball" example above. Neither the '772 Patent nor its prosecution history includes such an intentional disclaimer or unequivocal disavowal of claim scope.

Fujitsu attempts to confuse this issue by pointing out that the claims include other limitations that differentiate the overall claim scope and, therefore, claim differentiation principles do not apply. Fujitsu's Response at 5 – 6. Fujitsu further argues that the drafters of the '772 Patent simply used different claim terms to define the same subject matter. Fujitsu's Response at 7. This is illogical. As the Federal Circuit has instructed, claim terms are typically used consistently throughout the patent and differences in their usage can be a helpful guide to their meaning. "Optical line interface" and "bidirectional optical line interface," while related, are clearly different terms, and the difference is meaningful. Claims 14 – 16 include the term "bidirectional" <u>nineteen times</u>. The term, however, does not appear in any other claim of the patent. If the draftsman intended the scope of the "optical line interface" referenced in each of the claims to mean a "bidirectional optical line interface," he simply would have used the same language in every claim. He did not. Rather, for 3 of the 24 patent claims, he specifically drafted the claims such that the "optical line interface" is bidirectional. To ignore these differences, as Fujitsu would have the Court do, is manifest error sufficient to grant Tellabs' Motion for Reconsideration.

    **C.**    **The Intrinsic Record of the Patent Does Not Explicitly Limit the Term "Optical Line Interface" to be Bidirectional, and Such Limitation Should Not be Imported into the Claim.**

Fujitsu's argument that "optical line interface" has no ordinary meaning is ultimately irrelevant when intrinsic evidence supplies the meaning. The intrinsic record of the patent clearly uses the term "bidirectional" with respect to paired fibers, not just a single fiber. The book *Optical Networks*, by co-inventor Dr. Rajiv Ramaswami, is included within the intrinsic record of the patent, and "[t]he parties agree that *Optical Networks* reflects the understanding of

a person of ordinary skill at the time of the invention."[5]  The Court's construction should be broad enough to encompass all understandings of a person of ordinary skill in the art, and *Optical Networks* repeatedly uses the term "bidirectional" with paired fibers.



Figure 10.8  A two-fiber bidirectional line-switched ring (BLSR/2). The ring has two fibers and half the bandwidth. Line protection is used to restore service after a failure.

*See also,* Figures 10.5, 10.6, 10.7, and section 10.4.2.[6]  Thus, Fujitsu's assertion that "Dr. Ramaswami's litigation-induced testimony . . . is entirely inconsistent with his 1996 pre-litigation statements" and that various pre-litigation books and papers "all [] plainly establish that an OLI carries bidirectional traffic in two directions on a single fiber," is demonstrably false.

Nothing in the intrinsic record of the patent explicitly limits or defines the term "optical line interface" to mean a "bidirectional optical line interface."[7]  This "bidirectional" limitation

---

[5] Claim Construction Order at 23.
[6] Relevant pages attached for the Court's convenience as Exhibit 1 to the Declaration of Kelley Conaty in Support of Tellabs Reply in Support of its Motion for Reconsideration ("Conaty Decl.").
[7] *See, Gillette Co. v. Energizer Holdings, Inc.,* 405 F.3d 1367, 1374 (Fed. Cir. 2005) ("This court has cautioned against limiting the claimed invention to preferred embodiments or specific examples in the

should not be imported into these broader claims: "[i]n the absence of any evidence to the contrary, we must presume that the use of [] different terms in the claims connotes different meanings." *Civix-DDI,* 2010 U.S. Dist. *LEXIS* 116373 at *39–40 (quoting *CAE Screenplates,* 224 F.3d 1308 at 1317).

> D. **Fujitsu's Inconsistent Arguments Undermine the Integrity of the Proceedings Before this Court and the United States Patent and Trademark Office.**

Fujitsu's opportunistic arguments that "optical line interface" has no ordinary meaning are clearly contrary to the intrinsic record of the '772 Patent, the claim construction record before this Court, and the reexamination record before the Patent Office. Fujitsu's Response at 11 – 15. Time and time again, in making its invalidity arguments before the Patent Office during the *inter partes* reexamination proceedings, Fujitsu identified and relied upon references in which Fujitsu characterized as an "optical line interface" an interface that does not meet the Court's latest construction. For example, Fujitsu's Third Party Requester's Appeal Brief to the Board of Patent Appeals and Interferences ("Fujitsu's Appeal Brief") includes repeated citations to Cao-1 (*see,* illustrations at 14 – 19; 23 – 26), Green (*see,* illustrations at 31, 33, 36), Chang (*see,* illustrations at 38, 39, 44, 45), and Wu (*see,* illustrations at 49 – 52) that characterize a receiving input and a transmitting output as constituting separate "optical line interfaces."[8]

Remarkably, Fujitsu asserts that "optical line interface" has no ordinary meaning within the art, and yet its own patent, United States Patent No. 5,831,970 ("the '970 Patent") uses the term "optical line interface units" to describe units (elements 302a and 302b) that interface with

---

specification.") (quoting *Texas Instruments, Inc. v. U.S. Int'l Trade Comm'n*, 805 F.2d 1558, 1563 (Fed. Cir. 1986)); *Dow Chem. Co. v. U.S.*, 226 F.3d 1334, 1341 – 1342 (Fed. Cir. 2000) ("We also note that as a general rule claims of a patent are not limited to the preferred embodiment . . . or to the examples listed within the patent specification." (internal citations omitted)).

[8] Relevant and highlighted portions of Fujitsu's Appeal Brief attached as Exhibit 2 to Conaty Decl. Fujitsu's Appeal Brief is dated January 10, 2011 – after the *Markman* briefing and hearing had taken place in this action.

unidirectional optical transmission lines (elements 301a and 301b) to receive (but not also transmit) optical signals.[9] *See,* the '970 Patent, Figure 2; Tellabs' Responsive Brief on Claim Construction [Dkt. 322] at 50. The '970 Patent further uses the term "optical line interface units" to describe units (elements 306a and 306b) that interface with optical transmission lines (elements 301a and 301b) to transmit (but not also receive) optical signals.[10] Thus, Fujitsu's '970 Patent discloses an "optical line interface" that is adapted to receive an optical signal without also transmitting an optical signal in the reverse direction. *See,* Fig. 2, 302a, 302b.

Clearly, Fujitsu's '970 Patent further demonstrates that, apart from Fujitsu's immediate purposes within the context of this litigation, the term "optical line interface" indeed has an ordinary meaning that is consistent with this Court's preliminary construction but inconsistent with this Court's *Markman* Order. Fujitsu's opportunistic argument before this Court for a narrow construction, while simultaneously arguing for broad interpretation by the Patent Office, undermines the credibility of Fujitsu's arguments before this Court and the Patent Office. *See, TDM America v. United States*, 2011 U.S. Claims *LEXIS* 1717 at *21 - 22; 99 U.S.P.Q.2D (BNA) 1866, 1872 (Fed. Cl. Aug. 16, 2011). ("[r]egardless of whether TDM should be subject to estoppel, TDM's unabashed contradictory arguments have diminished TDM's credibility in the eyes of the Court.") (attached as Exhibit 4 to Conaty Decl.)

**II. THE COURT SHOULD RECONSIDER ITS CONSTRUCTION OF "OPTICAL DEMULTIPLEXER" IN LIGHT OF THE INTRINSIC RECORD.**

Contrary to Fujitsu's allegations otherwise, *Optical Networks*, by co-inventor Dr. Ramaswami, was cited to the Patent Office during prosecution and is therefore included within

---

[9] *See* U.S. Patent No. 5,831,970 at 10:11-13 (attached as Exhibit 3 to Conaty Decl.). The '970 Patent predates the '772 Patent, issued on November 3, 1998, and lists Fujitsu Limited as the assignee.
[10] *Id.* at 10:20 – 22.

the *intrinsic record* of the '772 Patent. This work reflects the understanding of those of ordinary skill in the art – the inventor – at the time of the invention. Federal Circuit law is clear that:

> [w]hen prior art that sheds light on the meaning of a term is cited by the patentee, it can have particular value as a guide to the proper construction of the term, because it may indicate not only the meaning of the term to persons skilled in the art, but also that the patentee intended to adopt that meaning.

*Arthur A. Collins, Inc. v. N. Telecom Ltd.,* 216 F.3d 1042, 1045 (Fed. Cir. 2000).[11] Absent explicit disclaimer or disavowal, the Court's construction of "optical demultiplexer" should be broad enough to encompass the understanding of this term by a person of ordinary skill in the art and, more specifically, the contemporaneous documentation of the understanding of an actual inventor of the patent. Tellabs' Motion seeks to bring this intrinsic evidence to the Court's attention. *See* Tellabs' Motion [Dkt. 432] at 8 – 12.

   A.   **The Court's Construction of "Optical Demultiplexer" Imports the Requirement of "Waveguide" Inputs and Outputs, Contrary to the Teaching of the Intrinsic Record of the Patent.**

In *Optical Networks*, Dr. Ramaswami teaches that gratings, a type of demultiplexer, have no input or output constraints.[12] Fujitsu's Response argues that "one or two ambiguous statements from Dr. Ramaswami and Dr. Gerstel that may, from Tellabs' adversarial perspective, appear potentially inconsistent with the Court's construction." However, it is hard to imagine a more clearer, contemporaneous statement from a co-inventor: "[i]n WDM [wavelength division multiplexed] communication systems, <u>gratings are used as demultiplexers</u> to separate the individual wavelengths."[13] Likewise, co-inventor Dr. Gerstel's teachings in *Future of*

---

[11] *See also, LG Elec's, Inc. v. Bizcom Elec's, Inc.,* 453 F. 3d 1364, 1375 (Fed. Cir. 2006); *V-Formation, Inc. v. Benetton Group SpA,* 401 F.3d 1307, 1311 (Fed. Cir. 2005) ("This court has established that 'prior art cited in a patent or cited in the prosecution history of the patent constitutes intrinsic evidence.'").

[12] Section 3.3.1 of *Optical Networks* at 93 – 94, entitled "Gratings" ("In WDM [wavelength division multiplexed] communication systems, gratings are used as demultiplexers to separate the individual wavelengths.").

[13] *Optical Networks* at 93–94 (emphasis added).

*Waveguide Routing* demonstrate no such "waveguide" limitation.[14] Viewed in their entirety, both the intrinsic record of the patent and a contemporaneous work authored by one of the co-inventors reveal that the existence of any input or output limitations, such as waveguides, should have no bearing on whether the object is a demultiplexer. As such, the added "waveguide" limitation should not be imported into the construction for the term "demultiplexer."[15]

The Federal Circuit has acknowledged that "the distinction between using the specification to interpret the meaning of a claim and importing limitations from the specification into the claim can be a difficult one to apply in practice," and suggests that "the court's focus remain[ ] on understanding how a person of ordinary skill in the art would understand the claim terms." *Phillips,* 415 F. 3d at 1323. The intrinsic record of the patent and the contemporaneous works of the inventors reflect the understanding of one of ordinary skill in the art. In view of this, Tellabs' Motion seeks to bring to the Court's attention the fact that the intrinsic record of the '772 Patent clearly includes embodiments without any input or output constraints and demonstrates that the inventors did not intend to incorporate the added limitation of "waveguide" inputs and outputs to their claims. This Court's Preliminary Claim Construction properly reflects these teachings of the inventors and includes the use of gratings as an embodiment of a demultiplexer with no additional input or output constraints:

> A device that receives a plurality of wavelengths multiplexed together as an optical signal and outputs each of the plurality of wavelengths as at least one of the following: (a) individual wavelengths, (b) bands of wavelengths or (c) a combination of bands and individual wavelengths.[16]

---

[14] *See Future of Wavelength Routing* at 16, Figure 3. *See also,* Figure 3 ("When the signal gets to the other end of the fiber it is split by an optical demultiplexer, which acts like a prism, to separate wavelength-specific optical signals (the same grating could be used again).").

[15] In fact, the side-by-side comparison of the chart from Fujitsu's Response is telling. *See* Fujitsu Response at 16. The express limitation of "waveguide" inputs/outputs only appears in the column on the left. This imported limitation is not found in the cited language from the '772 Patent.

[16] Preliminary Claim Construction at 10.

**TELLABS' REPLY IN SUPPORT OF ITS MOTION FOR RECONSIDERATION**  9

Tellabs therefore requests that the Court reinstate its Preliminary Construction for "optical demultiplexer."

> **B. Tellabs Proposed Construction of "Optical Demultiplexer" is Consistent With the Intrinsic Record of the '772 Patent, the Understanding of a Person of Ordinary Skill in the Art, and the Inventors' Testimony.**

Fujitsu attempts to distract this Court from the merits of Tellabs' argument by suggesting Tellabs attempted a "bait-and-switch," arguing to this Court that embodiments cited from *Optical Networks* are found in the specification of the '772 Patent. *See,* Fujitsu Response at 17. Such assertions are disingenuous, at best. Tellingly, Fujitsu uses creatively bracketed "quotations" and provides no citation to Tellabs' Motion to support this unfounded accusation. In fact, Tellabs' Motion repeatedly and accurately states that Dr. Ramaswami's work – *Optical Networks* – forms a part of the *intrinsic record* of the patent, which a court should consider in its entirety in construing the patent's claim terms. *See* Claim Construction Order at 23, *Arthur A. Collins, Inc.,* 216 F.3d at 1045.

Similarly, Fujitsu argues that counsel for Tellabs somehow conceded at the Tutorial that "the definition of 'optical demultiplexer' must include a single signal input and multiple outputs," stating that this "concession" is a "major admission" that the Court's construction is accurate. Fujitsu's Response at 19. In reality, the "concession" by Tellabs' counsel referenced inputs and outputs but clearly made no mention of optical fibers or in any way suggested the importation of the "waveguide" limitation for such inputs and outputs. Inputs and outputs need not be optical waveguides, and this limitation should not be imported into the construction for the term "demultiplexer."

Finally, Fujitsu's Response argues that Tellabs' proposed construction is contrary to both the testimony of the '772 Patent inventors and the evidence of the meaning of "optical demultiplexer" as understood by those of ordinary skill. Fujitsu's Response at 19 – 20. Such

arguments are disingenuous and false. As this Court has already acknowledged, "[t]he parties agree that *Optical Networks* reflects the understanding of a person of ordinary skill at the time of the invention,"[17] and *Optical Networks* clearly discloses demultiplexers without input or output constraints.[18] Further, the portion of Dr. Ramaswami's testimony cited by Fujitsu was not directed to "optical demultiplexers" generally. Rather, it was specifically directed to Figure 1 of the '772 Patent, and the specification describes Figure 1 as having an optical fiber. The portion of Dr. Gerstel's testimony cited by Fujitsu is likewise taken out of context. In responding to a series of hypothetical questions, Dr. Gertsel noted that, with respect to the hypothetical demultiplexer being described by Fujitsu's counsel "in theory, it's possible."[19] Such creative citations cannot undermine the clear intrinsic record of the '772 Patent and its evidence of the meaning of "optical demultiplexer" to those of ordinary skill in the art.

### C. Fujitsu's Arguments Directly Contradict the its Submissions to the United States Patent and Trademark Office During Reexamination.

Once again, Fujitsu's arguments in its Response directly contradict the record established by Fujitsu before the Patent Office in reexamination. Before this Court, Fujitsu argues that a grating cannot be a demultiplexer. Fujitsu's Response at 17 – 18. However, several of the references cited by Fujitsu to the Patent Office in reexamination demonstrate that, in fact, a grating can be a demultiplexer. For example, *Fiber Optic Networks* ("the Green reference"), relied upon by Fujitsu it the *inter partes* reexamination proceeding, illustrates demultiplexer and

---

[17] Claim Construction Order at 23.
[18] *Optical Networks* at 93–94.
[19] *See,* Testimony immediately prior to that cited by Fujitsu at Gerstel Dep. Tr. at 137:12 – 138:1 (Q. "I know you're saying it's not what you expect typically, but my question is, is there any reason that you cannot build that kind of multiplexer? . . . A. Hypothetically, it's possible to build a device that you've mentioned. It wouldn't be something that would have wide -- necessarily wide applicability, but in theory, it's possible.") (attached as Exhibit 5 to Conaty Decl.)

multiplexer symbols in association with labels that read "gratings."[20] That same reference further describes gratings as demultiplexers and/or multiplexers. *See*, Sections 11.7 and 11.8, attached as Exhibit 6 to Conaty Decl. Fujitsu itself goes one step further in its Appeal Brief and actually labels/annotates demux and mux symbols (i.e., gratings) as a "demultiplexer" and "multiplexer," respectively. *See, e.g.,* Fujitsu's Appeal Brief at 31, 33, 36.

In fact, in its January 2011 Appeal Brief before the Patent Office, Fujitsu itself defines a demultiplexer as merely "a device that separates signals." Fujitsu's Appeal Brief at 35 ("A demultiplexer (a device that separates signals) works in the opposite direction as a multiplexer (a device that combines signals)."). This statement clearly supports the construction proposed by Tellabs: "**a device that** receives a plurality of wavelengths multiplexed together as an optical signal and **separates the plurality of wavelengths** into at least one of the following: (a) individual wavelengths, (b) bands of wavelengths or (c) a combination of bands and individual wavelengths." *See,* Tellabs' Responsive Brief on Claim Construction [Dkt. 322] at 19. However, in the context of the proceeding before this Court, Fujitsu advanced a substantially different construction.

Fujitsu clearly is offering one argument to the Patent Office to attack the validity of the '772 Patent claims and the opposite argument to this Court in an attempt to avoid infringement. Such contradictory arguments undermine the integrity of these proceedings. *See, TDM America*, 2011 U.S. Claims *LEXIS* 1717 at *21 - 22. The intrinsic record of the '772 Patent and the record before the Patent Office in reexamination both support the fact that those of ordinary skill in the art consider a grating, without any input or output constraints, to be one example of a demultiplexer.

---

[20] See highlighted portions of P. Green, *Fiber Optic Networks* (1993) attached as Exhibit 6 to Conaty Decl.

**TELLABS' REPLY IN SUPPORT OF ITS MOTION FOR RECONSIDERATION**      12

## III. CONCLUSION

Under clear Federal Circuit case law, the Court's claim construction should consider all of the '772 Patent claims, including now cancelled claims. It should also avoid importing unnecessary limitations into the claims, especially when such limitations do not necessarily include embodiments specifically contemplated by the inventors in the intrinsic record of the patent. Tellabs therefore asks that the Court reconsider its September 29 Order construing "optical line interface" and "optical demultiplexer" and reinstate its own Preliminary Constructions.

## IV. REQUEST FOR HEARING.

Tellabs believes that the issues and arguments contained in its Motion for Reconsideration merit a short hearing before the Court.

| | |
|---|---|
| Dated: December 8, 2011 | Respectfully submitted, |

*/s/ James P. Bradley*
David T. Pritikin
Richard A. Cederoth
Richard O'Malley

**SIDLEY AUSTIN LLP**
One South Dearborn Street
Chicago, Illinois 60603
Telephone: 312.853.7000
Facsimile: 312.853.7036

James P. Bradley (*admitted pro hac vice*)
Texas Bar No. 02826000
Steven C. Malin (*admitted pro hac vice*)
Texas Bar No. 12859750
Mark A. Dodd (*admitted pro hac vice*)
Texas Bar No. 24040815
Kelley A. Conaty (*admitted pro hac vice*)
Texas Bar No. 24040716
Kristoffer B. Leftwich (*admitted pro hac vice*)
Texas Bar No. 24046285
Benjamin B. Kelly (*admitted pro hac vice*)
Texas Bar No. 24055765

**SIDLEY AUSTIN LLP**
717 North Harwood
Suite 3400
Dallas, Texas 75201
Telephone: 214.981.3300
Facsimile: 214.981.3400

**ATTORNEYS FOR
TELLABS OPERATIONS, INC., TELLABS INC.,
AND TELLABS NORTH AMERICA, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of December, 2011, I caused a copy of the foregoing document to be served on opposing counsel via the Court's ECF system pursuant to Local Rule 5.5(a)(3) and Section X(C) of General Order 09-014 (June 5, 2009) (General Order on Electronic Case Filing).

*/s/    Kelley Conaty*