UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TELLABS OPERATIONS, INC. <br><br> PLAINTIFF, <br><br> V. <br><br> FUJITSU LIMITED AND FUJITSU NETWORK COMMUNICATIONS, INC., <br> DEFENDANTS | CIVIL ACTION NO. 08-CV-3379 <br> CIVIL ACTION NO. 1:09-CV-04530 <br><br><br><br> **JUDGE HOLDERMAN** <br> **MAGISTRATE JUDGE COLE** |
| FUJITSU LIMITED <br> Plaintiff, <br><br> vs. <br><br> TELLABS OPERATIONS, INC. ET AL. <br> Defendants, | **JURY TRIAL DEMANDED** <br><br> **Consolidated for Discovery** <br><br> **FILED UNDER SEAL** |

**PLAINTIFF TELLABS OPERATIONS, INC.'S REPLY IN SUPPORT OF ITS
MOTION TO SEVER AND STAY CLAIMS INVOLVING THE '772 PATENT**

**INTRODUCTION**

In opposing Tellabs Operations, Inc.'s ("Tellabs") motion to sever and stay claims involving the '772 Patent, Fujitsu Limited ("Fujitsu") asks the court to ignore the reexamination proceeding that Fujitsu itself initiated and to commit error by construing the claims at issue based on an incomplete intrinsic record. Fujitsu feigns indignation about the timing of Tellabs' motion. But Fujitsu itself initiated the reexamination at issue in 2009 and Tellabs has simply participated in that proceeding according to the United States Patent and Trademark Office's ("USPTO") schedule and rules. Tellabs has remained consistent in its claim construction position before the USPTO and this Court. However, because of the recent BPAI decision on

appeal and Tellabs' recent submission in the reexamination, the prosecution history of the '772 Patent is necessarily still in flux. Accordingly, the Court should decide Tellabs' motion to reconsider in light of the *full* intrinsic record, after reexamination is complete. The Court's resolution of the motion to reconsider certain '772 Patent claim constructions will affect the resolution of Fujitsu's motion for summary judgment regarding the '772 Patent. Accordingly, the Court should sever the claims involving the '772 Patent from the other claims in this action and stay all deadlines related to this patent, including the deadlines for Tellabs' motion to reconsider and Fujitsu's motion for summary judgment.

## **ARGUMENT**

**I.     Fujitsu Asks The Court To Ignore The Effects Of A Reexamination Proceeding Fujitsu Itself Initiated.**

Contrary to Fujitsu's assertion, Tellabs does not seek an "end run around the Court's *Markman* Order." (Fujitsu Opp. at 2.) Nor has Tellabs "suddenly decided to eschew the Court in favor of casting its '772 lot with the PTO." (Fujitsu Opp. at 6.) Rather, Tellabs has simply responded, in due course, to the reexamination proceeding *initiated by Fujitsu* in 2009. And unlike Fujitsu, Tellabs has taken consistent claim construction positions in both the USPTO and this litigation. The Fujitsu-initiated reexamination, in light of the recent BPAI decision and Tellabs' proposed claim amendments, has caused the claims themselves and the intrinsic record used to construe those claims to be uncertain.

Fujitsu argues that a stay would unnecessarily extend the threat of the '772 Patent for several more years. (Fujitsu Opp. at 4.) However, Fujitsu chose to initiate reexamination in the midst of litigation, and when it did so, Fujitsu knew that this state of flux was a possibility. Fujitsu also argues that "Tellabs' motion to stay should take its place in line" behind the motion to reconsider and the motion for summary judgment. (Fujitsu Opp. at 4.) However, as explained

2

below, the Court should logically wait and resolve the motion for reconsideration in light of a fully developed intrinsic record, after reexamination is complete. Moreover, Fujitsu pursued reexamination long before either of these motions were filed. To the extent "order in time" is relevant to resolution of these motions, the motion to stay is a direct result of the earlier-filed (July 2, 2009) reexamination, which therefore should be considered "first in line."

Fujitsu's accusation that Tellabs is attempting to "engage in forum shopping" (Fujitsu Opp. at 3) is ironic given that it was Fujitsu's decision to move the dispute regarding the '772 Patent into a second forum. Fujitsu should not now be allowed to deny the important impact of the administrative procedure Fujitsu itself pursued. Fujitsu seeks to have it both ways—initiate a reexamination proceeding and then ignore that proceeding when it suits Fujitsu's litigation strategy. The Court should not countenance such behavior.

Fujitsu's accusation that Tellabs has engaged in "dilatory" tactics similar to that of the patent owner in *Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.*, C 03-1431 SBA, 2007 WL 1655625 (N.D. Cal. June 7, 2007) is wrong. In *Fresenius*, the accused infringer filed requests for *ex parte* reexamination on two of the four patents-in-suit. 2007 WL 1655625 at *1. Subsequently, the court ruled on cross motions for summary judgment on invalidty and infringement issues. *Id.* A nine day jury trial was held which yielded verdicts in the accused infringer's favor. *Id.* However, the Court later granted patentee's motions for judgment as a matter of law and a new trial. *Id.* at *2. After a new pretrial order had been filed and a new trial date set, the accused infringer filed a request for reexamination of a third patent-in-suit and moved to stay the litigation. *Id.* The court denied the accused infringer's motion to stay, relying "heavily" on the fact that "not only is pretrial preparation complete in this matter, but *a trial has already been held.*" *Id.* at *3 (emphasis in original). Moreover, the court found the accused

3

infringer's motives dilatory because it had "waited until it had had a trial, had litigated motions for judgment as a matter of law and for a new trial on the merits, and *then* had a favorable PTO action to request a stay." *Id.* at *6. The court also noted that the parties were prepared for a new trial: "discovery is complete, the period for dispositive motions has closed, the parties have already listed, reviewed, and objected to exhibits and discovery designations, and the jury instructions are complete." *Id.* at *4. In this case, discovery is not complete, dispositive motions have not been decided, the parties have not made their pretrial submissions, no trial has been conducted, and no post-trial motions have been resolved. The procedural posture of this case is entirely distinguishable from *Fresenius* and favors the grant of a stay. Moreover, Tellabs has not delayed in requesting a stay because no stay would have been appropriate before the BPAI decision in December 2011 and Tellabs' petition to reopen prosecution.

**II.  Tellabs' Motion For Reconsideration Is Not Ripe For Resolution Because The Court Should Construe Claim Terms In Light Of A Fully Developed Intrinsic Record.**

Fujitsu asserts—without legal citation—that the evidence relied upon in claim construction necessarily "will not be affected by the '772 reexamination proceeding." (Fujitsu Opp. at 7.) Fujitsu is wrong. The Federal Circuit has repeatedly instructed that in construing claim terms, a court should "consider the patent's prosecution history." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1317 (Fed. Cir. 2005) (*en banc*). Indeed, "the best source for understanding a technical term is the specification from which it arose, ***informed, as needed, by the prosecution history***." *Id.* at 1315 (internal quotation omitted) (emphasis added). The prosecution history is part of the "intrinsic evidence" and includes a complete record of all proceedings before the USPTO—including reexamination proceedings. *Id.* at 1317 ("The prosecution history, which we have designated as part of the 'intrinsic evidence,' consists of the complete record of the proceedings before the PTO . . . ."); *Alloc, Inc. v. Norman D. Lifton Co.*, 03 CIV. 4419 (PAC),

4

2007 WL 2089303 (S.D.N.Y. July 18, 2007) ("A patent's prosecution history during a reissue or re-examination proceeding is part of the intrinsic evidence of claim meaning, just as is the original prosecution history . . . ."). *See also Howmedica Osteonics Corp. v. Tranquil Prospects, Ltd.*, 401 F.3d 1367, 1372 (Fed. Cir. 2005) (using statements made in prosecution history of a reexamination to support construction of claim term and reverse a summary judgment that claims were indefinite).

Thus, "through statements made during prosecution or reexamination an applicant for a patent or a patent owner, as the case may be, may commit to a particular meaning for a patent term, which meaning is then binding in litigation." *CVI/Beta Ventures, Inc. v. Tura LP*, 112 F.3d 1146, 1158 (Fed. Cir. 1997). In fact, "[b]ecause an examiner in reexamination can be considered one of ordinary skill in the art, his construction of the asserted claims carries significant weight." *St. Clair Intellectual Prop. Consultants, Inc. v. Canon Inc.*, 2011 WL 66166, *6 (Fed. Cir. 2011) (*nonprecedential*). Because reexamination proceedings are part of the intrinsic record and should be consulted during claim construction, the Federal Circuit has instructed district courts to monitor reexamination proceedings to determine if claim construction issues have been affected:

> The district court should monitor the [*inter partes* reexamination] proceedings before the PTO to ascertain whether its construction of any of the claims has been impacted by further action at the PTO or any subsequent proceedings.

*Procter & Gamble Co. v. Kraft Foods Global, Inc.*, 549 F.3d 842, 848 (Fed. Cir. 2008).

In this case, the recent decision by the BPAI and Tellabs' petition to reopen prosecution mean that additional evidence will be made a part of the intrinsic record before reexamination is complete. In its most recent submission that remains pending before the examiner, Tellabs has continued to make amendments, cancel claims, add new claims, and make arguments to the examiner. The examiner will respond to Tellabs' submissions in due course and may make

5

statements relevant to the proper construction of the terms at issue in Tellabs' motion to reconsider. If this Court makes further claim construction rulings, while reexamination is ongoing, it may be necessary to revisit those constructions yet again, after reexamination is complete. *See Beneficial Innovations, Inc. v. Blockdot, Inc.*, 2010 Markman 2246291, 2010 WL 2246291, *2–*4 (E.D. Tex. 2010) (granting motion for reconsideration of claim construction order in view of arguments patentee made to the USPTO to overcome a prior art rejection in a co-pending reexamination). Accordingly, the Court should rule on the motion to reconsider in light of a *complete* intrinsic record, after reexamination has concluded.

### III. Fujitsu's Claim Differentiation Argument Is A Red Hearing.

Fujitsu accuses Tellabs of manufacturing an artificial "claim differentiation scheme." (Fujitsu Opp. at 9.) However, Fujitsu's argument is hypothetical and pure speculation. At this point, neither party knows if the doctrine of claim differentiation will apply to whatever claims ultimately emerge from reexamination. Regardless, Fujitsu's protestations about claim differentiation arguments miss the point. If the examiner construes a dependent claim during the '772 Patent reexamination and further determines that the claim meets the conditions of patentability, the claim is proper and should be allowed.

If Fujitsu believes that a dependent claim (or any claim) is overly broad, Fujitsu should make that argument to the examiner rather than argue to this Court in hypotheticals. Indeed, the very purpose of an *inter partes* proceeding is to allow petitioners like Fujitsu to make such arguments to the examiner. If the examiner ultimately finds that Tellabs' dependent claims are supported as written, the doctrine of claim differentiation *may* dictate that independent claims are of a broader scope. However, there is nothing underhanded or improper about this result. Indeed, such a result would be consistent with Tellabs' claim construction position to the USPTO and to this Court.

### IV. Tellabs Has Taken Consistent Claim Construction Positions Before Both The USPTO And This Court.

Throughout this litigation and during the reexamination proceedings, Tellabs has taken consistent positions with respect to the construction of the claim terms "optical line interface" and "optical demultiplexer." For example, in its motion for reconsideration, Tellabs argued that "this Court should construe 'optical line interface' to have a broader interpretation than 'bidirectional optical line interface.'" (08 Dkt. 432 at 7.) And in Tellabs' latest submission to the USPTO, Tellabs submitted evidence from its expert, Dr. Leaird, which stated: "While any such single optical fiber requirement for both transmission and reception may be readily understood by a POSITA to be inherent to the term 'bidirectional optical line interface,' it is not similarly understood to be an inherent requirement of the broader term 'optical line interface.'" (Declaration of Daniel E. Leaird Under 37 C.F.R. § 1.132 at 4-5 (emphasis added).)

Similarly, with respect to "optical demultiplexer," Tellabs argued in its motion for reconsideration that "[t]he Court's construction of 'Optical Demultiplexers' imports the requirement of waveguide inputs and outputs." (08 Dkt. 432 at 9.) And in its latest submission to the USPTO, Tellabs presented evidence that:

> In the context of the '772 patent, while a POSITA understands that an optical demultiplexer receives and outputs optical signals, a POSITA would not understand the term "optical demultiplexer" to alone require an optical fiber or optical waveguide for the optical demultiplexer's receipt of an optical signal, nor to alone require optical fibers or optical waveguides for the output of optical signals. A POSITA understands that an optical demultiplexer may be implemented in various ways, not all of which require optical fiber or another optical waveguide for the receipt and output of optical signals. An optical grating, for example, can receive and output optical signals through the air.

(Declaration of Daniel E. Leaird Under 37 C.F.R. § 1.132 at 5.).

Although Fujitsu's opposition attempts to portray Tellabs' conduct as "revisionist" (Fujitsu Opp. at 3) and argues that Tellabs' statements to the USPTO have been "self-serving"

7

(Fujitsu Opp. at 4), Tellabs believes the constructions it has proposed to this Court—and to the USPTO—are the correct ones and have been consistent.

In contrast, Fujitsu has taken inconsistent claim construction positions before this Court and the USPTO. For example, Fujitsu has argued to the Court that the term "optical line interface" should be construed as "An interface adapted for transmitting/receiving wavelength division multiplexed optical communication signals on a single optical fiber (where 'transmitting/receiving' means 'transmitting and receiving')." However, in making its invalidity arguments before the USPTO during the *inter partes* reexamination, Fujitsu identified and relied upon references in which Fujitsu characterized as an "optical line interface" an interface that does not meet this proposed construction. For example, Fujitsu's Third Party Requester's Appeal Brief to the Board of Patent Appeals and Interferences includes repeated citations to Cao-1 (*see,* illustrations at 14 – 19; 23 – 26), Green (*see,* illustrations at 31, 33, 36), Chang (*see,* illustrations at 38, 39, 44, 45), and Wu (*see,* illustrations at 49 – 52) that characterize a receiving input and a transmitting output as constituting separate "optical line interfaces." (*See* 08 Dkt. 439, Tellabs' Reply In Support Of Its Motion For Reconsideration at 6-7.) Similarly, before this Court, with respect to the term "optical demultiplexer," Fujitsu argued that a grating cannot be a demultiplexer. (08 Dkt. 437, Fujitsu's Response To Tellabs' Motion For Reconsideration Of The Court's *Markman* Claim Construction Order For U.S. Patent No. 7,369,772 at 17-18.) However, several of the references cited by Fujitsu to the USPTO in reexamination demonstrate that, in fact, a grating can be a demultiplexer. (*See* 08 Dkt. 439, Tellabs' Reply In Support Of Its Motion For Reconsideration at 11-12.)

Tellabs' straightforward and consistent position on claim construction before both the USPTO and the Court in this litigation demonstrates that Tellabs is not seeking an "end run"

around the Court's *Markman* order. Rather, Tellabs has simply informed the USPTO of its claim construction position during a reexamination initiated by Fujitsu.

V.  **Regardless Of The Motion To Reconsider, Tellabs Still Opposes Fujitsu's Motion For Summary Judgment And Tellabs Cannot Easily Bring A New Expert Up To Speed.**

Fujitsu argues that its motion for summary judgment should be "dispositive of Tellabs' allegations of infringement of the '772 Patent." (Fujitsu Opp. at 15.) However, resolution of that motion necessarily requires resolution of Tellabs' motion for reconsideration, which, as explained above, necessarily remains subject to the ongoing reexamination. Moreover, Fujitsu implies that a denial of Tellabs' motion for reconsideration means that Fujitsu is automatically entitled to summary judgment of non-infringement. However, regardless of the how the Court rules on the motion to reconsider, Tellabs has a strong opposition to Fujitsu's motion for summary judgment.

Fujitsu also states that Tellabs' expert, Dr. Leaird, will require only "limited" study before he is able to assist in responding to Fujitsu's motion for summary judgment. (Fujitsu Opp. at 17.) Fujitsu's argument ignores the fact that the protective order would likely prevent Dr. Leaird from serving as both a litigation and prosecution expert. Moreover, Tellabs does not know whether Dr. Leaird would even be willing and/or able to serve as a litigation expert.[1]

## CONCLUSION

For the foregoing reasons, and all those stated in Tellabs' opening memorandum, the Court should grant Plaintiff Tellabs Operations, Inc.'s Motion to Sever and Stay Claims Involving the '772 Patent.

---

[1] Moreover, Fujitsu understates the amount of work that would be necessary on Dr. Leaird's part. In additional to reviewing documentation about Fujitsu's products, Dr. Leaird would need to review lengthy deposition transcripts and documents from third-parties. And Dr. Leaird could not immediately start reviewing such documents because Tellabs would need to comply with the provisions of the Court's protective order limiting disclosure of confidential information.

| | |
|---|---|
| Dated: February 7, 2012 | Respectfully submitted,<br><br>/s/ Mark A. Dodd<br>David T. Pritikin<br>Richard A. Cederoth<br>Richard O'Malley<br><br>**SIDLEY AUSTIN LLP**<br>One South Dearborn Street<br>Chicago, Illinois 60603<br>Telephone: 312.853.7000<br>Facsimile: 312.853.7036<br><br>James P. Bradley (admitted *pro hac vice*)<br>Texas Bar No. 02826000<br>Steven C. Malin (admitted *pro hac vice*)<br>Texas Bar No. 12859750<br>Mark A. Dodd (admitted *pro hac vice*)<br>Texas Bar No. 24040815<br>Kelley A. Conaty (admitted *pro hac vice*)<br>Texas Bar No. 24040716<br>Kristoffer B. Leftwich (admitted *pro hac vice*)<br>Texas Bar No. 24046285<br>Benjamin B. Kelly (admitted *pro hac vice*)<br>Texas Bar No. 24055765<br><br>SIDLEY AUSTIN LLP<br>717 North Harwood<br>Suite 3400<br>Dallas, Texas 75201<br>Telephone: 214.981.3300<br>Facsimile: 214.981.3400<br><br>ATTORNEYS FOR<br>TELLABS OPERATIONS, INC., TELLABS INC.,<br>AND TELLABS NORTH AMERICA |

**CERTIFICATE OF SERVICE**

I hereby certify that on the 7th day of February, 2012, I caused a copy of the foregoing document to be served on opposing counsel via the Court's ECF system pursuant to Local Rule 5.5(a)(3) and Section X(C) of General Order 09-014 (June 5, 2009) (General Order on Electronic Case Filing).

                                                /s/      Mark A. Dodd