IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FUJITSU LIMITED,                                  ) | |
| )                                                 | |
| Plaintiff,                     ) | |
| )                                                 | |
| v.                                                ) | |
| )                                                 | |
| TELLABS OPERATIONS, INC. and     ) | |
| TELLABS, INC.,                                    ) | |
| )                                                 | |
| Defendants.                    ) | |
| _____ ) | |
| TELLABS OPERATIONS, INC.                          ) | |
| )                                                 | |
| Plaintiff,                     ) | |
| )                                                 | Nos. 08 C 3379 & 09 C 4530 |
| v.                                                ) | |
| )                                                 | Consolidated for Discovery |
| FUJITSU LIMITED and FUJITSU       ) | |
| NETWORK COMMUNICATIONS, INC.,                     ) | |
| )                                                 | |
| Defendants.                    ) | |
| _____ ) | |
| FUJITSU LIMITED,                                  ) | |
| )                                                 | |
| Counter Claimant,              ) | |
| )                                                 | |
| v.                                                ) | |
| )                                                 | |
| TELLABS OPERATIONS, INC.,        ) | |
| TELLABS, INC., and TELLABS NORTH  ) | |
| AMERICA, INC.,                                    ) | |
| )                                                 | |
| Counter Defendants.            ) | |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, Chief Judge:

Before the court are two motions by Tellabs Operations, Inc. that relate to its '772

patent. On Oct. 27, 2011, Tellabs asked this court to reconsider its construction of two claim

terms used in the '772 patent. (Case No. 08 C 3379, Dkt. No. 432 ("Mot. to Reconsider.").) Subsequent developments in the *inter partes* reexamination proceeding involving this patent have prompted Fujitsu to ask that this court stay its ruling on the motion to reconsider, Fujitsu's pending motion for summary judgment of non-infringement of that patent (Case No. 09 C 4530, Dkt. No. 419), and the discovery deadlines and expert reports related to that patent. (Case No. 08 C 3379, Dkt. No. 453. ("Mot. to Stay.").) After careful review and for the reasons stated herein, Tellabs' Motion to Stay is denied, except to the extent that the court will stay any issues remaining after its ruling on the motion for summary judgment. Further, after reviewing the parties filings and hearing their counsel in oral argument, for the reasons stated herein, Tellabs' Motion to Reconsider the court's claim construction rulings is denied.

## BACKGROUND

On Sept. 29, 2011, this court issued its claim construction determinations regarding 19 disputed claim terms found in five of the patents at issue in this case. *Fujitsu Ltd. v. Tellabs Operations, Inc.*, --- F. Supp. 2d ---, 2011 WL 4578207 (N.D. Ill. Sept. 29, 2011) (Dkt. No. 427 in 08 C 3379, Dkt. No. 379 in 09 C 4530).[1] Those determinations followed a multi-day tutorial and *Markman* hearing in which counsel for the parties were fully heard. The court's 2011 claim construction ruling was preceded by the court's 2009 preliminary claim construction ruling addressing certain claim terms in three of the patents, including the '772 patent, based on the intrinsic evidence. *Tellabs Operations, Inc. v. Fujitsu Ltd.*, No. 08 C 3379, 2009 WL 1329153

---

[1] The patents at issue in the claim construction ruling were: the 5,486,418 ("'418 patent"), issued on Jan 31, 1995, and assigned to Fujitsu Ltd.; the 5,521,737 ("'737 patent"), issued on May 28, 1996, and assigned to Fujitsu Ltd.; the 5,526,163 ("'163 patent"), issued on June 11, 1996, and assigned to Fujitsu Ltd.; the 7,227,681("'681 patent"), issued on June 5, 2007, and assigned to Fujitsu Ltd.; and the 7,369,772 ("'772 patent"), issued on May 6, 2008, to Tellabs Operations, Inc.

2

(N.D. Ill. March 13, 2009). Tellabs, through its motion for reconsideration, seeks to have this court reconsider its claim construction determinations of Sept. 29, 2011 relating to two claim terms in Tellabs' '772 patent: "optical line interface" and "optical demultiplexer."

As to "optical line interface," the court determined that to a person of ordinary skill in the art at the time of the invention, this term meant: "an interface adapted for transmitting/receiving wavelength division multiplexed optical communication signals on a single optical fiber (where 'transmitting/receiving' means 'transmitting and receiving')." *Fujitsu*, 2011 WL 4578207, at *17.

This court construed the second term "optical demultiplexer," as meaning, to a person of ordinary skill in the art at the time of the invention:

> A device that receives N optical wavelengths multiplexed together as an optical signal on a single optical waveguide and outputs the N wavelength channels on individual optical waveguides, where the device outputs each of the N wavelengths as at least one of the following: (a) individual wavelengths, (b) bands of wavelengths or (c) a combination of bands and individual wavelengths.

Id. at *15.

Tellabs contends that both these definitions are incorrect in light of the intrinsic record and urges this court to reinstate its preliminary claim constructions as to these terms. (Mot. to Reconsider 12). Before turning to the Motion to Reconsider the court's claim term constructions, however, the court must address Tellabs' subsequent request for a stay of the litigation as relates to the '772 patent.

While this litigation has been pending, so too has a parallel reexamination of the '772 patent before the United States Patent and Trademark Office ("PTO"). On July 6, 2009, Fujitsu filed a request for an *inter partes* reexamination of the patent, and on Dec. 9, 2009, Fujitsu filed a request

for an *ex parte* reexamination of the patent. During the *inter partes* reexamination, Tellabs cancelled claims 1 and 3-5 of the '772 patent, and during the *ex parte* reexamination, it cancelled claims 14-16. Claims 2, 6-13, and 17-24 remained at issue.

During the *inter partes* reexamination, the examiner confirmed the patentability of claims 2 and 6-24. Fujitsu appealed that decision to the Board of Patent Appeals and Inferences ("BPAI"), which on Dec. 12, 2011, reversed the examiner's decision and rejected all the asserted claims. On Jan. 12, 2012, Tellabs requested a reopening of the prosecution before the examiner and presented new claims 25-41. At this point in time, Tellabs asserts, all issued claims of the '772 patent are either cancelled or amended as a result of the pending reexamination. (Mot. to Stay 2.) The court turns first to the motion to stay.

## MOTION TO STAY

Tellabs contends that a severance and stay of the claims related to the '772 patent will serve judicial economy because it is unclear what claims of the '772 patent will go forward. (*Id.* at 4.) Tellabs suggests that when the '772 patent emerges from reexamination, the parties can litigate the claims involving it in a separate suit. Additionally, Tellabs informs the court that its expert on the '772 patent has suffered a stroke which prevents him from continuing to serve in that capacity, so it would need additional time to respond to the pending summary judgment motion on the '772 patent.[2]

---

[2] Tellabs had an expert, Dr. Leaird, submit a declaration to the PTO as part of the reexamination proceeding urging that office to accept its constructions for the terms "optical line interface" and "optical demultiplexer." However, Tellabs asserts that is not clear that Dr. Leaird will be able to serve as a litigation expert in this case.

Fujitsu does not object to Tellabs receiving additional time to get a new expert up to speed, nor does it object to a stay of any remaining issues involving the '772 patent once the court has decided the motion to reconsider and the motion for summary judgment. But Fujitsu contends that it would be prejudiced by any stay of the pending motions, given that this case is (in its view at least) on the eve of resolution. Additionally, Fujitsu notes that the amended claims pending in reexamination include the terms "optical line interface" and "optical demultiplexer." Because Tellabs cannot broaden the scope of the claims in reexamination, *see* 35 U.S.C. § 305, the court's construction of these terms should apply to any claims that survive reexamination, Fujitsu argues. (Case No. 08 C 3379, Dkt. No. 459 ("Fujitsu's Resp. to Mot. to Stay" 8.).) Fujitsu contends that Tellabs is attempting to "undo" the court's *Markman* constructions by adding dependent claims to the '772 patent in reexamination that contain the limitations that Tellabs wants to remove from this court's constructions of the terms "optical line interface" and "optical demultiplexer." If these dependent claims are allowed, Fujitsu contends, Tellabs will attempt to argue under the doctrine of claim differentiation that these limitations cannot be included in the definition of "optical line interface," and "optical demultiplexer," regardless of this court's claim construction ruling. (Fujitsu's Resp. to Mot. to Stay 9–10.).)

A district court has the inherent power to stay a proceeding pending a PTO reexamination, but it is not required to do so. *Viskase Corp. v. American Nat'l Can Co.*, 261 F.3d 1316, 1328 (Fed. Cir. 2001); *Ethicon, Inc. v. Quigg,* 849 F.2d 1422, 1426–27 (Fed. Cir. 1988). In ruling on a motion to stay, the court should consider whether a stay will: (1) unduly prejudice or tactically disadvantage the non-moving party, (2) simplify the issues in question and streamline the trial, and (3) reduce the burden of litigation on the parties and on the court. *See*

*Enzyme Corp. v. Cobrek Pharms., Inc.*, No. 10 C 112, 2011 WL 686807, at *1 (N.D. Ill. Feb. 17, 2011). The party moving for a stay, in this case Tellabs, has the burden of showing that it is warranted. *Kimberly-Clark Worldwide, Inc. v. First Quality Baby Products, LLC*, No. 09 C 916, 2010 WL 4630833, at *1 (E.D.Wis. Nov. 4, 2010). The court notes that Tellabs does not address these factors in its motion, but seems to hinge its argument on the fact that this court should not rule on the '772 patent until the intrinsic record is complete upon the conclusion of the re-examination process. (Case No. 08 C 3379, Dkt. No. 462 ("Tellabs' Reply in Supp. of Mot. to Stay" 4–6.).)

The problem with Tellabs' argument is that there is no way to tell how much longer the reexamination process may take, while this case is nearing a resolution. The court finds that Fujitsu would be unduly prejudiced by a stay at this late stage in the litigation. Trial in this case is set for July 16, 2012, and there are pending summary judgment motions related to all five of the patents-in-suit, including the '772 patent. Fujitsu contends that this court's claim construction ruling dictates a finding of non-infringement as to the '772 patent. Without prejudging the merits of Fujitsu's motion, the court notes that a ruling in Fujitsu's favor would likely end nearly four years of litigation over the '772 patent, while a stay could extend the case for years. Whether its position on the merits is right or wrong, Fujitsu is entitled to a resolution of issues that threaten its business interests.

Nor would a stay at this late stage of the case greatly simplify the issues before the court or reduce the burden of litigation on the parties and the court, given that the '772 patent is one of five patents-in-suit, all involving related fiber optic technology. The court has expended a great deal of effort becoming familiar with this technology, and the parties have expended a great deal

of effort briefing the various pending summary judgment motions. Courts routinely deny motions to stay pending reexamination when discovery or claim construction (or even claim construction briefing) has been completed and the case is on the verge of trial. *See, e.g., Nokia Corp. v. Apple Inc.*, No. 09-791-GMS, 2011 WL 2160904, at *1 (D. Del. June 1, 2011); *Roy-G-Biv Corp. v. Fanuc Ltd.*, No. 02:07-CV-418 (DF), 2009 WL 1080854, at *3 (E.D. Tex. April 14, 2009); *Freestones Med. Care Holdings, Inc. v. Baxter Int'l, Inc.*, No. C 03-1431 SBA, 2007 WL 1655625, at *3 (N.D. Cal. June 7, 2007).

There is no *per se* rule that patent cases be stayed pending re-examination because such a rule "would invite parties to unilaterally derail" litigation. *Soverain Software LLC v. Amazon .com, Inc.,* 356 F. Supp. 2d 660, 662 (E.D. Tex. 2005). Even accepting Tellabs' argument that this court would benefit from a complete prosecution history, that benefit does not outweigh the prejudice to Fujitsu or the court's interest in avoiding piecemeal litigation. *See Silicon Graphics, Inc. v. ATI Techs.*, No. 06-C-611-C, 2007 WL 5433478, at *2 (W.D. Wis. Aug. 8, 2007). As the late Judge James B. Moran once wrote in a similar context: "We are too far along the road to justify halting the journey while the [plaintiff] explores an alternate route." *Enprotech Corp. v. Autotech Corp.*, No. 88 C 4853, 1990 WL 37217, at *2 (N.D. Ill. March 16, 1990). For these reasons, "Plaintiff Tellabs Operations, Inc.'s Motion and Memorandum in Support of its Motion to Sever and Stay Claims Involving the '772 patent" is denied. (Case No. 08 C 379, Dkt. No. 453.)

However, the court will stay any remaining issues involving the '772 patent after the pending motion for summary judgment is decided. Additionally, the court will grant Tellabs additional time to obtain an expert, be it Dr. Leaird or someone else, who can respond to

7

Fujitsu's pending motion for summary judgment on the '772 patent. The court gives Tellabs until May 21, 2012, to file its response to the motion. Fujitsu's reply will be due June 4, 2012.

## MOTION TO RECONSIDER

The court granted Tellabs' request for oral argument on its motion to reconsider, which was held on March 14, 2012. The court will again consider the two claim terms that remain in dispute as to Tellabs' 772 patent. Claim construction orders are not final and may be altered prior to or during trial, so the court will not impose the typical stringent standards that apply to a motion to reconsider. *See Cisco Sys., Inc. v. Telcordia Techs., Inc.*, 590 F. Supp. 2d 828, 830 (E.D. Tex. 2008) (citing *O2 Micro Intern. Ltd. v. Beyond Innovation Tech. Co., Ltd.,* 521 F.3d 1351 (Fed.Cir.2008)).

## ANALYSIS

Tellabs contends that this court's claim construction order raised additional issues that neither party had a chance to brief. (Mot. to Reconsider 1.) In particular, as to the term "optical line interface," Tellabs argues that this court failed to construe the term in light of the term "bidirectional optical line interface," which appears in now-cancelled claims 14-16 of the '772 patent. (*Id.* at 2.) In addition, Tellabs argues that in construing the term "optical demultiplexer," the court failed to include specific embodiments of the term. (*Id.*) The court will address each argument in turn.

    1.    The Court's Construction of "Optical Line Interface"

Initially, both parties briefed the terms "bidirectional optical line interface" and "optical line interface." However, because Tellabs cancelled claims 14-16 of the '772 patent during the reexamination process, the court did not construe the term "bidirectional optical line interface," which appeared in those cancelled claims. *Fujitsu*, 2011 WL 4578207, at *50 n.4. In light of

the fact that these claims were no longer pending, the court rejected Tellabs' argument that based on the doctrine of claim differentiation, the presence of the term "bidirectional optical line interface" in claims 14-16 demonstrated that the term "optical line interface" need not be bidirectional. *Id.* at n. 7.

Tellabs contends that this court erred in not applying the doctrine of claim differentiation, and urges this court to apply the doctrine to construe an "optical line interface" as "an interface that can carry a plurality of wavelengths multiplexed together as an optical signal." (Mot. to Reconsider 7.) This was the construction the court adopted in its preliminary claim construction ruling. *Tellabs Operations, Inc. v. Fujitsu Ltd.*, 2009 WL 1329153, at *7.

Tellabs contends the court erred in not applying the doctrine of claim differentiation in light of the previous existence of claims 14-16 and also in light of its '508 patent, which is the parent of the '772 patent. (Mot. to Reconsider 6.) The '508 patent, as Tellabs argued during claim construction briefing (Case No. 09 4530, Dkt. 261 (Tellabs' 772 *Markman* Slides, 120, 126), contains an dependent claim (Claim 2) that uses the term "bidirectional," while the independent claim to which it refers (Claim 1) does not. Tellabs cites *Kara Tech. Inc. v. Stamps.com Inc.*, 582 F.3d 1341, 1347 (Fed. Cir. 2009), for the proposition that a court should look to a parent patent to understand the meaning of claim terms in a related patent. In *Kara*, however, unlike in this case, the court had construed claim terms in both the parent patent and the patent that was a continuation-in-part of it. *Id.* at 1346. Based on the parties' *Markman* briefs, this court cannot conclude that Claim 1 of the '508 patent encompasses both unidirectional and bidirectional line interfaces, as Tellabs argues.

9

The bulk of Tellabs' argument, at least in its briefing, is focused on the meaning of now-cancelled claims 14-16 of the '772 patent. Fujitsu contends the court correctly found that the doctrine of claim differentiation inapplicable and argues that the court's construction is supported by the intrinsic evidence. (Fujitsu's Resp. to Mot. to Reconsider 4–11.) The court agrees. The Federal Circuit has explained that the doctrine of claim differentiation, in its "most specific sense," provides courts a presumption that an independent claim should not be construed as requiring a limitation added by a dependent claim. *Curtiss-Wright Flow Control Corp., v. Velan, Inc.*, 438 F.3d 1374, 1380 (2006). "Thus, the claim differentiation tool works best in the relationship between independent and dependent claims." *Id.*

In this case, Fujitsu argues that Tellabs improperly applies the doctrine by using claim differentiation to distinguish between different independent claims. Specifically, Tellabs contends that the language "bidirectional optical line interface," which appears in independent claim 14, should inform this court's understanding of the term "optical line interface" in independent claims 6, 17, and 24. The doctrine of claim differentiation, however, does apply beyond the independent/dependent claim scenario, s*ee, e.g., Kara*, 582 F.3d at 1347, although the argument for applying it in such circumstances perhaps has less force.

The Federal Circuit has characterized claim differentiation more generally to mean "the presumption that each claim in a patent has a different scope." *Curtiss-Wright*, 438 F.3d at 1380 (internal citations omitted). However, as the Federal Circuit has explained, claim drafters may use different terms to define the same subject. *Id.*; *see Hormone Research Found., Inc. v. Genentech, Inc.,* 904 F.2d 1558, 1567 (Fed. Cir. 1990) ("It is not unusual that separate claims may define the invention using different terminology, especially where (as here) independent

claims are involved."). Further, claim differentiation is only a presumption, "not a hard and fast rule of construction." *Kraft Foods v. Int'l Trading Co.*, 203 F.3d 1362, 1368 (Fed. Cir. 2000) (internal citations omitted). The doctrine cannot broaden claims beyond their correct scope. *Id.*

Additionally, the fact that claims are presumed to differ in scope does not mean that every limitation must be distinguished from its counterpart in another claim, but only that one limitation must differ. *Id.* Here, as Fujitsu correctly argues, there are other terms that differentiate claim 14 from claims 6, 17, and 24. (Fujitsu Resp. to Mot. to Reconsider, 5.) In fact, Tellabs acknowledged in its *Markman* briefing that "no two claims of the '772 patent define exactly the same subject matter." (Case No. 08-3379, Dkt. No. 322, Tellabs' Responsive *Markman* Br.) When each claim in a patent has a different scope regardless of whether two similar claim terms are construed to be identical, there is much less reason to apply the doctrine of claim differentiaton. *Kraft Foods*, 203 F.3d at 1368; *see* Mark A. Lemley, *The Limits of Claim Differentiation*, 22 Berkeley Tech. L.J. 1389, 1399 (2007) (arguing that because the rationale for claim differentiation is to prevent a claim from being superfluous, the doctrine should not be applied in cases where two claims have more than one element that differs).

In seeking reconsideration of the construction of the claim term "optical line interface," Tellabs relies primarily on the Federal Circuit's ruling in *CAE Screenplates, Inc. v. Heinrich Fielder GmbH & Co. K.G.*, 224 F.3d 1308 (2000). There, the Federal Circuit determined that the district court properly took into consideration the original claim of a patent, which had been cancelled, in construing the term "bottom plane." *Id.* at 1317–18. In *CAE Screenplates*, the patent holder used the term "bottom plane" to narrow the scope of the claim to avoid prior art cited by the patent examiner in rejecting the original claim. *Id.* at 1317. The cancelled claim,

which referred to the "bottom of the groove," was thus important in determining what the patent holder meant by the new claim. *Id.* While *CAE Screenplates* suggests that it may be appropriate to consider cancelled claims in construing the terms at issue, it does not hold that district courts must apply the doctrine of claim differentiation to claims that have been cancelled, as Tellabs suggests. Rather, the reasoning of *CAE Screenplates* is nothing more than an extension of the general principle that "it is the totality of the prosecution history which defines and establishes the metes and bounds of the patent grant." *Id.* at 1319 (citing *Elkay Mfg. Co. v. Ebco Mfg. Co.*, 192 F.3d 973, 979 (Fed. Cir. 1999)).

In this instance, Tellabs voluntarily cancelled claims 14-16, apparently to streamline the reexamination proceedings before the PTO. (Case No. 08-3379, Dkt. No. 411 ("Status Report Regarding Reexamination").) At oral argument, Tellabs' counsel contended that these claims are not essential to showing infringement, but are essential to the application of the doctrine of claim differentiation. Nonetheless, the court remains puzzled as to why Tellabs would give up what it contends are valid claims that are central to the interpretation of the term "optical line interface" as it is used in the other claims of the patent.

Regardless, this court firmly believes it did not commit error in declining to apply the doctrine of claim differentiation because, as noted above, that doctrine's application is uncertain at best in cases involving independent claims that have differences that go beyond the disputed claim terms. More importantly, while *CAE Screenplates* holds that "in the absence of evidence to the contrary, we must presume that the use of these different terms connotes different meanings, that presumption can be overcome by the evidence." *See Civix-DDI, LLC v. Hotels.com*, No. 05 C 6869, 2010 WL 4386475, at *12–14 (N.D. Ill. Oct. 24, 2010) (construing

"Internet" and "internet" to have the same meaning despite the different capitalization). Here, in light of the entire prosecution history, any presumption that the terms "bidirectional line interface" and "optical line interface" should have different meanings is overcome.

First, it is important to note that the term "bidirectional optical line interface" did not appear in Tellabs' original patent application filed in 2003 and was not added until a Sept. 10, 2007, amendment to the application. This amendment occurred after Fujitsu had accused Tellabs of infringing its patents (Fujitsu's Resp. 9, n. 10), and the court must consider the fact that the parties were on the cusp of litigation regarding related technology at the time these changes were made. Furthermore, the court agrees with Fujitsu that because the term "optical line interface" was included in the original patent specification and "bidirectional optical line interface" was not, the latter term does not alter the meaning of the former. While the original patent claims may inform the meaning of claims that follow, especially in light of the U.S. Patent and Trademark Office's interpretation of the original claim, the converse is not necessarily true. *See ICU Med. Inc. v. Alaris Med. Sys., Inc.*, 558 F.3d 1368, 1376 (declining to apply the doctrine of claim differentiation to a dependent claim added years after the filing dates of the original patents). Although Tellabs argues that it cancelled claims 14-16 due to efficiency concerns, it is clear to the court that an optical line interface is bidirectional over a single fiber, so claims 14-16 were redundant on this point.

This is clear given the intrinsic evidence that the court considered in construing the term "optical line interface." First, the court held that the claim term "optical line interface" did not have a customary meaning to a person of ordinary skill in the art. *Fujitsu*, 2011 WL 4578207, at *15. The court based this determination on inventor testimony by Dr. Ramaswami, who

acknowledged that the term was not commonly used, and Dr. Gerstel, who testified that the term is "somewhat generic." *Id.* In light of that, the court looked to the patent specification, which the court found "repeatedly and uniformly discloses that the "optical line interface" is bidirectional and transmits over a single fiber. *Id.* at *16. While the Federal Circuit has cautioned that courts must not import limitations from the specification, it is entirely proper for the court to "rely heavily on the written description for guidance as to the meaning of the claims." *ICU Med.*, 558 F.3d at 1374. (internal citations omitted).

While Tellabs contends that the court erred in finding that the term "optical line interface" does not have an ordinary meaning, the court disagrees. Asked at his deposition if he had heard of an "optical line interface," Dr. Ramaswami's testified that it was not commonly used and that he did not want to presume its definition. (Case No. 08 3379, Dkt. No. 298, Ex. B-5, at 149:15–21.) Given that a co-inventor was unsure about the meaning of the term, it clearly did not have common meaning. As such, the court correctly looked to the specification, which "consistently require[s] that the 'optical line interface is a single, bidirectional optical fiber." *Fujitsu*, 2011 WL 4578207, at *16.

In its reply, Tellabs argues that Fujitsu has taken inconsistent positions because, in its argument to the Patent Office during the re-examination process, it relied on authority that characterized a receiving input and a transmitting output as separate "optical line interfaces." (Case No. 08 C 3379, Dkt. No. 439 ("Tellabs' Reply in Supp. of Mot. to Reconsider" 6.) Tellabs makes a similar argument that Fujitsu's statements to the Patent Office regarding the term "optical demultiplexer," discussed below. (Tellabs' Reply in Supp. of Mot. to Reconsider 11–12.)

At oral argument, Fujitsu's counsel took issue with Tellabs characterization of its arguments before the PTO, contending that it has never argued that a grating, standing alone, is a demultiplexer. Regardless, the court declines to step into this morass, as it seems clear that Fujitsu's arguments before the PTO were made based on the court's preliminary claim construction ruling, and the court sees nothing improper about this approach. Tellabs also seeks to find support for its argument that "optical line interface" has a common meaning in the use of that claim term in Fujitsu's own 5,831,970 patent, but that patent is not before the court and does not involve the same technology, so the court will not consider it. For these reasons, the court denies Tellabs' motion to reconsider its construction of the claim term "optical line interface."

2.  The Court's Construction of "Optical DeMultiplexer"

As to the term "optical demultiplexer," Tellabs contends that this court erred because its construction does not include a specific embodiment disclosed in the intrinsic evidence — the use of a grating as a demultiplexer to separate individual wavelengths. (Mot. to Reconsider 8-10.) Tellabs' argument is centered around its contention that its patent imposes no constraints as to how the light arrives at or departs from the optical demultiplexer. (*Id.* at 10.)

In its claim construction ruling, this court noted that Tellabs had presented certain extrinsic evidence suggesting that the optical signal could be input into the optical demultiplexer through the air rather than through a waveguide. *Fujitsu Ltd.*, 2011 WL 4578207, at *14. But based on the disclosures of the '772 patent and the intrinsic evidence, the court found that a person of ordinary skill in the art would understand an ordinary optical demultiplexer to have such an input. *Id.* Specifically, the court held:

> The evidence . . . repeatedly refers to an input over a physical medium, with that medium being either broadly described as a waveguide or more specifically referred

>   to as a single optical fiber or a fiber optical channel. Thus, although inputting the
>   optical signal into optical demultiplexer via air may be possible, one of ordinary skill
>   in the art of the '772 Patent would not understand that the "optical demultiplexer" for
>   the WDM system disclosed in the '772 Patent could receive such an input.

*Id.*

In seeking reconsideration, Tellabs relies on writings by co-inventors Dr. Ramaswami and Dr. Gerstel. In Dr. Ramaswami's book, *Optical Networks*, which this court has determined to be part of the intrinsic record, he wrote that "gratings are used as demultiplexers to separate the individual wavelengths." (*Optical Networks*, at 93–94, see Figure 3.8.) Additionally, Tellabs points to a 1996 article by Dr. Gerstel, *On the Future of Wavelength Routing Networks*, which includes a diagram (Figure 3) and text explaining that grating can be used as a demultiplexer. (Case No. 08-3379, Dkt. No. 432-1 (*On the Future of Wavelength Routing Networks* 16.) Tellabs argues that because these prior art references reflect the ordinary meaning of the term "optical demultiplexer" at the time of the invention, this court should reinstate its preliminary construction of the term, which allowed for the use of gratings as an embodiment of a demultiplexer. (Tellabs' Reply in Supp. of Mot. to Reconsider 9.)

Fujitsu responds that the court correctly construed an "optical demultiplexer" to be connected to a single input waveguide and plural output waveguides. (Fujitsu's Resp. to Mot. to Reconsider 16.) Fujitsu additionally argues, as it did during claim construction, that while gratings can be used to construct optical demultiplexers, they are not, in and of themselves, demultiplexers. (Fujitsu's Resp. to Mot. to Reconsider 17, *see* Fujitsu's Rebuttal *Markman* Slides, Case No. 09 4530, Dkt. No. 276, at 32.) This argument is supported by a passage in *Optical Networks* in which Dr. Ramaswami explains that other components, including lenses and mirrors, are needed to construct a demultiplexer. *Optical Networks*, 95.

After reviewing the intrinsic evidence, the court finds that its construction of "optical demultiplexer" was in keeping with the weight of that evidence. For example, as the court noted in its claim construction order, 2011 WL 4578207, at *13, *Optical Networks* explains that "[a] multiplexer combines signals at different wavelengths on its input ports into a common output port, and a demultiplexer performs the opposite function." (*Optical Networks*, 90.) In its second edition, the textbook further explains that a multiplexer combines multiple wavelengths into a single fiber, while "[i]n the reverse direction, the same device acts as a demultiplexer to separate the different wavelengths. (*Optical Networks*, 2d ed., 116.) These passages indicate the need for a single input port and multiple output ports as part of an "optical demultiplexer." The '772 patent does not disclose gratings as demultiplexers through which a signal could be input over air. Because the specification, and the intrinsic evidence taken as a whole, supports this court's claim construction, the court denies Tellabs' motion to reconsider its construction of the term "optical demultiplexer."

## CONCLUSION

For the reasons stated herein, "Plaintiff Tellabs Operations, Inc.'s Motion and Memorandum in Support of its Motion to Sever and Stay Claims Involving the '772 Patent" (Case No. 08 C 3379, Dkt. No. 453) is denied, except to the extent that the court will stay any issues related to the '772 patent that remain after this court issues its summary judgment ruling. The court gives Tellabs until May 21, 2012, to file its response to Fujitsu's Motion for Summary Judgment of Non-infringement of the '772 patent. (Case No. 09 C 4530, Dkt. No. 421.) Fujitsu's reply will be due June 4, 2012. Additionally, "Plaintiff Tellabs Operations, Inc.'s

Motion and Memorandum in Support of its Motion for Reconsideration" (Case No. 08-3379, Dkt. No. 432) is denied.

ENTER:

_____
JAMES F. HOLDERMAN
Chief Judge, United States District Court

Date: March 21, 2012