**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| FUJITSU LIMITED<br><br>              PLAINTIFF,<br><br>  V.<br><br>TELLABS OPERATIONS, INC., TELLABS INC, AND TELLABS NORTH AMERICA, INC.<br><br>              DEFENDANTS. | CIVIL ACTION NO. 1:08-CV-3379<br>CIVIL ACTION NO. 1:09-CV-4530<br><br>**JUDGE HOLDERMAN**<br>**MAGISTRATE JUDGE COLE**<br><br>**JURY TRIAL DEMANDED** |

**TELLABS, INC.'S, TELLABS OPERATIONS, INC.'S AND TELLABS NORTH AMERICA, INC.'S
RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW
BASED ON FUJITSU LIMITED'S FAILURE TO PROVE INFRINGEMENT OF CLAIMS 6-8**

**TABLE OF CONTENTS**

I. LEGAL STANDARDS .................................................................................................... 1

II. BACKGROUND ............................................................................................................. 1

    A. THE '681 PATENT .............................................................................................. 1

III. NO REASONABLE JURY COURT FIND THAT CLAIM 6 OF THE '681 PATENT IS DIRECTLY INFRINGED. ................................................................... 5

    A. THE MIAM PRODUCT DOES NOT INCLUDE A CONTROLLER WHICH CONTROLS THE GAIN TO BE APPROXIMATELY CONSTANT. ....................... 5

    B. THE MIAM PRODUCT DOES NOT INCLUDE A CONTROLLER THAT CONTROLS THE GAIN TO BE APPROXIMATELY CONSTANT DURING VARIATION OF THE NUMBER OF CHANNELS IN THE WDM OPTICAL SIGNAL. ........... 6

        1. The Red-C Controller is in Automatic Power Control Mode at the Time of the Actual Variation in the Number of Channels. ........................ 6

        2. The Gain of Individual Channels Within the MIAM Product Are at their Maximum Deviation at the Time of the Actual Variation in the Number of Channels . ......................................................................... 10

    C. FUJITSU LIMITED FAILED TO ESTABLISH THE MIAM PRODUCT INCLUDES AN OPTICAL AMPLIFIER WHICH AMPLIFIES A WDM OPTICAL SIGNAL HAVING A VARIABLE NUMBER OF CHANNELS. ....................................... 13

IV. NO REASONABLE JURY COULD FIND THAT CLAIM 7 OF THE '681 PATENT IS DIRECTLY INFRINGED. ........................................................................ 14

    A. CLAIM 7 CANNOT BE INFRINGED WITHOUT FIRST INFRINGING CLAIM 6. .............. 14

    B. THE MIAM PRODUCT DOES NOT INCLUDE A CONTROLLER THAT CONTROLS THE GAIN TO BE APPROXIMATELY CONSTANT DURING VARIATION OF THE NUMBER OF CHANNELS IN THE WDM OPTICAL SIGNAL. ......... 14

V. NO REASONABLE JURY COULD FIND THAT CLAIM 8 OF THE '681 PATENT IS DIRECTLY INFRINGED. ........................................................................ 15

    A. CLAIM 8 CANNOT BE INFRINGED WITHOUT FIRST INFRINGING CLAIM 6. .............. 15

VI. CONCLUSION ............................................................................................................. 15

Pursuant to Federal Rule of Civil Procedure 50, Defendants Tellabs, Inc., Tellabs Operations, Inc. and Tellabs North America, Inc. (collectively, "Defendants") hereby move the Court to grant judgment as a matter of law that claims 6 – 8 of U.S. Patent No. 7,227,681 ("the '681 Patent") are not infringed for the reasons set forth below. Plaintiff has not offered a legally sufficient evidentiary basis for a reasonable jury to find these issues in Plaintiff's favor. Because Plaintiff has failed in its prima facie burden, the Court should hold as a matter of law that the asserted claims of the '681 Patent are not infringed. Fed. R. Civ. P. 50.

## I. LEGAL STANDARDS

Judgment as a matter of law is appropriate as to a particular issue when "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a). "[A] mere scintilla of supporting evidence will not suffice." *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1173 (7th Cir. 2002) (quotation omitted). In deciding a motion for judgment as a matter of law, "the court should review all of the evidence in the record" and "should give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached." *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 151 (2000) (quotations omitted).

## II. BACKGROUND

### A. The '681 Patent

Fujitsu Limited asserts that the MIAM product infringes claims 6 – 8 of the '681 Patent. The claims read as follows:

> 6. An apparatus comprising: an optical amplifier which amplifies a wavelength division multiplexed (WDM) optical signal having a variable number of channels associated with different wavelengths with a gain and outputs the amplified WDM optical signal, the optical amplifier including:
> an optical attenuator which controls a level of the amplified WDM optical signal,

>an optical filter making the gain substantially even with respect to said different wavelengths, and
>
>a controller which controls the gain to be approximately constant.
>
>7. An apparatus as in claim 6, wherein the controller controls the gain to be approximately constant during variation of the number of channels in the WDM optical signal.
>
>8. An apparatus as in claim 6, wherein an attenuation level of the optical attenuator is changed to control the level of the amplified WDM optical signal.

A "person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Phillips v. AWH Corp,* 415 F.3d 1303, 1313 (Fed. Cir. 2005) (*en banc*). The specification of the '681 Patent informs one of ordinary skill in the art that, for invention claimed by the '681 Patent, the optical amplifier of the asserted claims must include a specialized controller that keeps the gain constant when if the number of channels in a WDM optical signal changes:

>More specifically, objects of the present invention are achieved by providing a controller which (a) prior to, and subsequent to, varying the number of channels in the light signal, passes the amplified light signal with a varying light transmissivity so that a power level of the amplified light signal is maintained at an approximately constant level in accordance with the number of channels in the light signal, and, (b) *while the number of channels in the-light signal is being varied*, passes the amplified light signal with a constant light transmissivity.

Joint Ex. 2000, 2:38 – 47 (emphasis added).

When the number of channels (or wavelengths) is not changing, this specialized controller operates in a mode in which the total power of the optical signal is kept at a constant level. *See,* Joint Ex. 2000, Fig. 4 of the '681 Patent (below). This mode is called "automatic level control" or "ALC" for short. Figures 4(A) and (B) disclose this control methodology. *See,* Joint Ex. 2000, Fig. 4 of the '681 Patent. In particular, the controller operates in automatic level control or "ALC" mode before time t1 and after time t3. That is, before time t1 and after time t3

the controller ensures that the total power of the optical signal stays at a constant level. Transcript of Proceedings – Trial ("Trial Tr.") at 424:8 – 25; 426:2 – 5 (cited portions of the trial transcript attached to Declaration of Kelley Conaty in Support of Tellabs' Renewed Motion for Judgment as a matter of Law Based on Fujitsu Limited's Failure to Prove Infringement of Claims 6 – 8 as Exhibit A).



**Joint Ex. 2000, Fig. 4 of the '681 Patent.**

Dr. Willner repeatedly explained that the claimed controller is in AGC mode *during* the variation of the number of channels – that this is the '681 invention. Trial Tr. at 394:21 – 395:11 ("This whole paragraph, it says 'objects of the present invention,' and that means that it's this invention. It's the '681 invention."); 402:11 – 15; 405:7 – 15; 406:2 – 12; 407:8 – 408:3; 429:19 – 430:4; 1203:3 – 19; 398:5 - 10 ("While the number of channels is being varied, either through adding or dropping of the different color data channels, the controller is going to hold the gain constant or approximately constant."). *See also,* Trial Tr. dated 9/5/2012.

Between times t1 and t3, however, the function of the controller temporarily changes. During this time period, the controller ignores the constant power objective and instead operates to ensure that there is an approximately constant gain. *Id.; see also,* Trial Tr. at 425:1 – 14; 426:6 – 18; 840:11 - 25. This second mode, in which the focus is on keeping the gain approximately constant, is known as the automatic gain control or "AGC" mode. *Id.* In Figure 4, the disclosed controller is faced with a change in the number of channels occurring at time t2, between times t1 and t3. *Id.*

At the heart of the controller disclosed in the '681 Patent is a monitor signal processing circuit. *See, e.g.,* Joint Ex. 2000, Fig. 10, element 70. This monitor signal processing circuit receives a "control signal, which warns of a variation in the number of channels" in the WDM optical signal. Joint Ex. 2000 at 7:55-59; Trial Tr. at 433:9 – 17; 804:6 – 23. Upon receiving this control signal, which occurs at time t1 in Figure 4, the controller changes from its automatic level control mode to its automatic gain control mode. Joint Ex. 2000, Fig. 4; col. 9:36 – 45; Trial Tr. at 804:6 – 23. The controller reverts to its automatic level control mode at time t3, which may occur automatically a fixed time after t1, or it may occur upon receipt of a second control signal that indicates the change in channels is complete. Joint Ex. 2000, Fig. 4; col. 9:46 - 52. This control signal is critical to the "proper" operation of the controller disclosed in the specification of the '681 Patent – it allows the controller to be in AGC mode and hold the gain approximately constant during the actual variation of channels. *See, e.g.,* Joint Ex. 2000, col. 7:55 – 10:19; Trial Tr. at 804:24 – 805:20. In fact, neither Dr. Willner nor Fujitsu Limited identified any method to provide any optical amplifier embodiment with the advanced warning capability other than through the use of a monitor signal processing circuit. Trial Tr. at 805:6-9.

Dr. Buckman testified that he is unaware of any such method. Trial Tr. at 805:10 – 20. *See also,* Trial Tr. dated 9/5/2012.

The asserted claims of the '681 Patent specifically require "a controller which controls the gain to be approximately constant." *See,* Joint Ex. 2000, claim 6. The only way to ensure that the gain is "approximately constant during variation of the number of channels," as taught and required by the '681 Patent, is to be certain the controller is in its automatic gain, or AGC, control mode. *See, e.g.,* Joint Ex. 2000, col. 7:55 – 10:19; Trial Tr. at 394:21 – 395:11; 398:5 – 10; 402:11 – 15; 405:7 – 15; 406:2 – 12; 407:8 – 408:3; 429:19 – 430:4; 804:24 – 805:20. The disclosed method of ensuring this is to use a control signal received prior to the actual change in the number of channels. Joint Ex. 2000 at 7:55-59; 804:6 – 805:20.

### III. NO REASONABLE JURY COURT FIND THAT CLAIM 6 OF THE '681 PATENT IS DIRECTLY INFRINGED.

To prove infringement of a claim of the '681 Patent, Fujitsu Limited needed to establish that a MIAM product fulfilled each and every limitation of the claim. *See BMC Res., Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1378 (Fed. Cir. 2007). Accordingly, where Fujitsu Limited failed to provide evidence of the presence of a limitation in independent claim 6 of the '681 Patent, judgment of non-infringement as a matter of law should be granted as to that claim and all the claims that depend from it.

#### A. The MIAM Product Does Not Include a Controller Which Controls the Gain to be Approximately Constant.

The MIAM product does not infringe claim 6 because Fujitsu Limited has failed to show that it meets the claim element "a controller that controls the gain to be approximately constant." While the claims of the '681 Patent are directed to a controller that keeps the gain approximately constant, the Red-C optical gain block controller in the MIAM product is designed to keep the *output power* constant over time. PX 2013, RED-C Optical Networks Ltd.: Tellabs Amplifier –

Software Specifications, Rev. 0, 12/30/02 (RED-C Page 582-606) at PX 2013-8 – 9. Because the input power can and does change over time, the controller monitors the output power and *intentionally changes the gain* as needed to keep the output power constant. PX 2013-8 (description of the control algorithm for the Red-C OGB in the MIAM module); Trial Tr. at 841:17 – 20; 842:2 – 6 ("A controller would keep the output power constant by varying the gain, that is, it's -- by varying the gain.").

Specifically, the Red-C controller in the MIAM product checks the power level twenty times a second and, based upon those checks, determines what the gain needs to be to achieve the target output power. If the gain needs to be changed, the controller changes the gain, which may be as often as once every second. Trial Tr. at 1041:12 – 22; PX 2013-8.

Claim 6 requires "a controller which controls the gain to be approximately constant." A gain that is constantly monitored and potentially adjusted once every second can hardly be called "constant gain." Common sense dictates that anything that might change as often as 3600 times an hour would not be considered approximately constant. Trial Tr. at 846:8 – 12 ("By simple common sense, something that changes every second or up to every second is not something that's constant."). As no reasonable jury could determine that this claim limitation is met by the MIAM product with a Red-C controller, judgment of a matter of law should be granted. The MIAM product does not infringe claim 6 or the claims that depend from it.

> **B.     The MIAM Product Does Not Include a Controller that Controls the Gain to be Approximately Constant During Variation of the Number of Channels in the WDM Optical Signal.**
>
>> 1.     The Red-C Controller is in Automatic Power Control Mode at the Time of the Actual Variation in the Number of Channels.

Additionally, the MIAM product does not include a controller that controls the gain to be approximately constant at the time required by the '681 Patent. The specification of the '681

Patent discusses controlling the gain to be approximately constant over a time interval. That time interval may be different for various claims, but it always includes the point in time during a variation of the number of channels in the WDM optical signal. *See, e.g.,* Joint Ex. 2000, Fig. 4 of the '681 Patent; Trial Tr. at 839:2 – 15; 839:19 – 840:25; 1050:6 – 20; 1051:13 – 1052:15; 1054:8 – 15; 1055:4 - 8**.** This requirement was confirmed by Dr. Willner and counsel for Fujitsu Limited. Trial Tr. at 378:7 – 19; 394:21 – 395:11 ("This whole paragraph, it says 'objects of the present invention,' and that means that it's this invention. It's the '681 invention."); 397:2 – 19; 402:11 – 15; 405:7 – 15; 406:2 – 12; 407:8 – 408:3; 429:19 – 430:4; 398:5 - 10  ("While the number of channels is being varied, either through adding or dropping of the different color data channels, the controller is going to hold the gain constant or approximately constant."); 1055:4 – 8; 1203:3 - 19; *see also*, Joint Ex. 2000 at 2:38 – 47; Trial Tr. dated 9/5/3012. To infringe claim 6, therefore, the Red-C controller must control the gain to be approximately constant *during* the variation of the number of channels in the WDM optical signal. *See,* Trial Tr. at 839:2 – 15; 839:19 – 840:25; 1050:6 – 20; 1051:13 – 1052:15; 1054:8 – 15; 1055:4 - 8.

The Red-C controller in the MIAM product can be operated in one of two primary modes. As shown in *RED-C Optical Networks Ltd.: Tellabs Amplifier – Software Specifications*, the Red-C controller operates in either an automatic gain control ("AGC") mode or an automatic power control ("APC") mode. PX 2013-8 – 9; Trial Tr. at 841:1 - 15. In AGC mode, the controller attempts to keep the <u>gain</u> approximately constant regardless of changes in the input power. Trial Tr. at 453:2 – 4; 849:12 - 25. In APC, the Red-C controller attempts to keep the output <u>power</u> approximately constant regardless of changes in the input power. PX 2013-8 – 9; 849:12 – 25 ("If the controller is trying to keep the gain constant, then it's in the automatic gain control mode. If the controller is trying to keep the output power constant, then it's in the -- it's

been called automatic power control. It's also been called automatic level control are basically the same thing."). *See also,* Trial Tr. at 454:22 – 25.

The initial mode for the Red-C controller is the automatic power control mode, in which it attempts to keep the power approximately constant by varying the gain. PX 2013-8 ("the power per channel at the output of the EDFA [erbium-doped fiber amplifier] is kept constant."); Trial Tr. at 841:17 – 20; 842:2 – 6; 847:18 – 25; 850:4 - 7. The Red-C controller checks every second to see if the input power has changed enough that the change exceeds a threshold value called STAB_LEVEL or the stability level. PX 2013-9 at Figure 5 (below); *see also*, Trial Tr. at 456:20 – 457:19; 845:7 - 10. If the change in input power exceeds the stability level, the Red-C controller assumes that this large a change in the input power is due to a change in channel count. PX 2013-9 at Figure 5 (below); *see also*, Trial Tr. at 456:20 – 457:19. When the change in input power exceeds the stability level, then the Red-C controller changes from its standard automatic power control mode into its automatic gain control mode. PX 2013-9 at Figure 5 (below); *see also*, Trial Tr. at 456:20 – 457:19.

However, because the Red-C controller used by the accused MIAM product only determines that the change in input power exceeds the stability level **after** a variation in the number of channels, it only changes into this mode **after** the variation in the number of channels and remains in this mode only briefly before reverting to its standard automatic power control mode. PX 2013-8 – 9; Trial Tr. at 849:1 – 5; 850:8 – 14; 1033:18 – 1034:18; 1034:22 – 1035:22. At the time of the actual variation in the number of channels, however, the Red-C controller is indisputably in automatic **power** control mode, meaning that the gain is not held "approximately constant," as recited by the asserted claims. PX 2013-8 – 9. Trial Tr. at 848:1 – 7; 855:6 – 856:3; 856:8 – 16; 856:23 – 857:7; *see also,* DX326 (also described as Tellabs Ex. 326).



**PX 2013-9 at Fig. 5
(Control algorithm flow chart for the Red-C OGB in the MIAM module)**

Based on Fujitsu Limited's failure to provide any proof that the MIAM product includes a controller that controls the gain to be approximately constant **during** the variation of the number of channels in the WDM optical signal, judgment as a matter of law should be granted. No reasonable jury could conclude that the MIAM product infringes claim 6 or any claims that depend from it.

      2.      The Gain of Individual Channels Within the MIAM Product Are at their Maximum Deviation at the Time of the Actual Variation in the Number of Channels.

As noted above, the evidence clearly shows that the MIAM product does not include a controller that controls the gain to be approximately constant **during** the variation of the number of channels in the WDM optical signal. At trial, Dr. Willner stops his analysis here. He cited to the above software algorithm in PX 2013, where the operating gain is supposedly set, and concluded that, per the software specification, the Red-C optical gain block controller is *trying to* keep the gain constant during the change in the number of channels. He noted that this was the "goal" of the software specification. Trial Tr. at 456:20 – 458:12; *see also,* Trial Tr. dated 9/5/2012.

As Dr. Buckman explained, however, that algorithm merely sets the number in the software which then sets the *desired* gain. Trial Tr. at 1149:14 – 1150:13; Dr. Willner did not take the necessary additional step of considering what **the actual gain does** in response, particularly during a variation in the number of channels. Trial Tr. at 809:6 – 14. The additional analysis of the hardware's actual performance for steady state gain and the maximum excursion are critical to the analysis. Trial Tr. at 822:11 – 13; 1150:14 - 20.

When multiple channels are in steady state, the individual channels are likely to be off of the target gain by a different amount because each wavelength receives a slightly different gain from the Er-doped fiber. The Tellabs' specification permits such different wavelengths to have different gains by as much as $\pm$ 0.75 dB from the steady gain. PX 2012-15, Tellabs 7100 Electrically Controllable Optical Gain Blocks for Amplifier Modules, Rev E, 07/21/03 at Table 1 (below). For example, if the steady gain is to be 6 dB, individual wavelengths will be considered steady at 5.25 dB to 6.75 dB.

The Tellabs specification further shows that the gain of each individual channel should stay within ± 0.25 dB of this steady gain in order to remain at steady state (when the input power is constant). PX 2012-15 at Table 1 (below); Trial Tr. at 828:11 – 19; 828:25 – 829:15. For example, if the target gain is to be 6 dB and a channel is at 6.75 dB, the gain of an individual channel would satisfy the specification (and remain in steady state) as long as it stays within 6.5 dB to 7.0 dB.

However, the gain of each wavelength only varies by ± 0.25 dB over time as long as the number of channels does not change. Trial Tr. at 829:22 – 830:10. During the variation of the number of channels, the Tellabs specification for the optical gain block in the MIAM product permits a maximum excursion of ± 0.8 dB for that wavelength – <u>more than a factor of three greater than the steady state gain error when the number of channels is not changing</u>. PX 2012-14 – 15, Table 1 and Fig. 4.; Trial Tr. at 830:11 – 831:22; 832:4 – 8; 833:20 – 834:12; 1149:2 - 13. This specification is independent of the number of channels that are added or dropped. Trial Tr. at 834:13 – 21; 1146:5 – 1147:23. The specification likewise does not vary these tolerances based upon the level of gain, for example 6 dB versus 12 dB. They are absolute, as opposed to relative. They are also further proof that the MIAM product does not include a controller that keeps the gain approximately constant (because it can vary threefold during the channel change).

Figure 4 from the Tellabs' specification, PX 2012-15, shows how the gain of an individual wavelength changes as the number of channels is added or dropped. PX 2012-15; *see also*, TLEX 325; Trial Tr. at 825:16 – 834:21; 1145:7 - 25. <u>This is the only piece of evidence offered in this litigation that describes how the gain actually varies with respect to time in the Red-C controller</u>. Trial Tr. at 822:14 – 21. The maximum excursion actually occurs during the variation in the number of channels, as shown the annotated version of Figure 4 from the Tellabs

specification. PX 2012-14 at Fig. 4.; Trial Tr. at 830:11 – 831:22; 832:4 – 8; 833:20 – 834:21; 1148:7 - 17. In other words, the excursion or deviation is greatest, and thus the controller is keeping the gain *least* constant, during the actual variation of the number of channels in the WDM optical signal.



Figure 4: Transient AGC Response Time of surviving channel

This maximum excursion from the setting gain – during the change in the number of channels – is therefore more than 300% greater than that permitted when the input power is constant. Trial Tr. at 834:13 – 21; 1149:2 - 13. To the extent Dr. Willner and Fujitsu Limited try to minimize this change by comparing the allowable variation with respect to *wavelength* (flatness) at ± 0.75 dB to the maximum excursion of the gain (constancy) at ± 0.8 dB, Dr. Willner and Fujitsu Limited are comparing "apples and oranges." Trial Tr. at 1098:20 – 23; 1152:13 – 1153:14; 1153:23:1154:20. While the ± 0.25 dB variation over time may be permissible, a gain variation of three times the steady gain (± 0.8 dB) is clearly not steady gain. Such a change in the gain during the variation in the number of channels clearly **does not** satisfy keeping the gain "approximately constant during variation of the number of channels in the

WDM optical signal." The MIAM product, therefore, clearly does not include a controller that controls the gain to be approximately constant during variation of the number of channels in the WDM optical signal. Judgment as a matter of law should be granted as no reasonable jury could conclude that the MIAM product infringes claim 6 or any claims that depend from it. Trial Tr. at 838:9 – 25.

### C. Fujitsu Limited Failed to Establish the MIAM Product Includes an Optical Amplifier Which Amplifies a WDM Optical Signal Having a Variable Number of Channels.

Fujitsu Limited failed to offer any evidence to establish that the optical amplifier in the accused MIAM product amplifies a WDM optical signal *having a variable number of channels*. At trial, Dr. Willner simply stated that the MIAM amplifies "this sort of signal" and generally referenced Dr. Ghera's testimony and various documentation. *See, e.g.,* Trial Tr. at 8/28/12 at 451:1 – 8. No reasonable jury could find that the MIAM product satisfies this required claim element based on such unsupported opinion testimony.

Neither Fujitsu Limited nor Dr. Willner offered any evidence that a Tellabs' customer that purchased one of the accused MIAM products operated that MIAM product in a system in which there were intentional variations in the number of channels. The MIAM product can be used in a system in which there are no intentional variations in the number of channels – a system that would not meet this required element of claim 6. As such, these MIAM products **would not** have been amplifying WDM optical signals having an intentionally varying number of channels.

Given Fujitsu Limited's failure of proof regarding whether the accused MIAM products operated in a system with a WDM optical signal having a variable number of channels, judgment as a matter of law should be granted because no reasonable jury could conclude that claim 6 and all claims that depend from it are infringed.

IV. **NO REASONABLE JURY COULD FIND THAT CLAIM 7 OF THE '681 PATENT IS DIRECTLY INFRINGED.**

A. **Claim 7 Cannot be Infringed Without First Infringing Claim 6.**

"It is axiomatic that dependent claims cannot be found infringed unless the claims from which they depend have been found to have been infringed." *Wahpeton Canvas Co. v. Frontier, Inc.*, 870 F.2d 1546, 1553 (Fed. Cir. 1989). For the reasons stated above, no reasonable jury could conclude that there is infringement of independent claim 6 of the '681 Patent. As such, there can be no infringement of claim 7 of the '681 Patent.

B. **The MIAM Product Does Not Include a Controller that Controls the Gain to be Approximately Constant During Variation of the Number of Channels in the WDM Optical Signal.**

As explained above, the Red-C controller only determines that the change in input power exceeds the stability level **after** a change in the number of channels, it briefly changes into this mode **after** the change in the number of channels. PX 2013-8 – 9; Trial Tr. at 849:1 – 5; 850:8 – 14; 1033:18 – 1034:18; 1034:22 – 1035:22. The controller is therefore in automatic **power** control mode during the variation in channel count, meaning that the gain is not held "approximately constant," as recited by the asserted claims. PX 2013-8 – 9. Trial Tr. at 848:1 – 7; 855:6 – 856:3; 856:8 – 16; 856:23 – 857:7; *see also,* DX326 (also described as Tellabs Ex. 326).

No reasonable jury could conclude that the MIAM product includes a controller that controls the gain to be approximately constant during the variation of the number of channels in the WDM optical signal. Judgment as a matter of law of no infringement should be granted with respect to claim 7.

**V.      NO REASONABLE JURY COULD FIND THAT CLAIM 8 OF THE '681 PATENT IS DIRECTLY INFRINGED.**

**A.      Claim 8 Cannot be Infringed Without First Infringing Claim 6.**

As noted above, dependent claims cannot be infringed unless the claims from which they depend have been found to be infringed. *Wahpeton Canvas*, 870 F.2d at 1553. For the reasons stated above, no reasonable jury could conclude that there is infringement of independent claim 6 of the '681 Patent. As such, there can be no infringement of claim 8.

**VI.     CONCLUSION**

For all the foregoing reasons, the Court should grant judgment as a matter of law that the claims 6 – 8 of the '681 Patent are not infringed by the MIAM product.

| | |
|---|---|
| Respectfully submitted on:<br>September 5, 2012 | By: */s/ James P. Bradley* |

David T. Pritikin
Richard A. Cederoth
Richard O'Malley, Jr.
Robert Leighton

**SIDLEY AUSTIN LLP**
One South Dearborn Street
Chicago, Illinois 60603
Telephone: 312.853.7000
Facsimile: 312.853.7036

James P. Bradley (*admitted pro hac vice*)
Texas Bar No. 02826000
Steven C. Malin (*admitted pro hac vice*)
Texas Bar No. 12859750
Mark A. Dodd (*admitted pro hac vice*)
Texas Bar No. 24040815
Kelley A. Conaty (*admitted pro hac vice*)
Texas Bar No. 24040716
Kristoffer B. Leftwich (*admitted pro hac vice*)
Texas Bar No. 24046285
Benjamin B. Kelly (*admitted pro hac vice*)
Texas Bar No. 24055765

**SIDLEY AUSTIN LLP**
717 North Harwood
Suite 3400
Dallas, Texas 75201
Telephone: 214.981.3300
Facsimile: 214.981.3400

**ATTORNEYS FOR
TELLABS OPERATIONS, INC., TELLABS INC.,
AND TELLABS NORTH AMERICA**

## CERTIFICATE OF SERVICE

I certify that, on September 5, 2012, I caused a copy of the foregoing document to be served on counsel of record in this litigation through the Court's ECF system.

*/s/ Kelley Conaty*
Kelley Conaty