IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FUJITSU LIMITED<br><br>PLAINTIFF,<br><br>V.<br><br>TELLABS OPERATIONS, INC., TELLABS INC, AND TELLABS NORTH AMERICA, INC.<br><br>DEFENDANTS. | CIVIL ACTION NO. 1:08-CV-3379<br>CIVIL ACTION NO. 1:09-CV-4530<br><br>**JUDGE HOLDERMAN**<br>**MAGISTRATE JUDGE COLE**<br><br>**JURY TRIAL DEMANDED** |

**TELLABS, INC.'S, TELLABS OPERATIONS, INC.'S, AND TELLABS NORTH AMERICA, INC.'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW THAT U.S. PATENT NO. 7,227,681 IS INVALID**

# TABLE OF CONTENTS

I.  BACKGROUND. .................................................................................................. 1

    A.  JUDGMENT AS A MATTER OF LAW ............................................................ 1

    B.  CASE HISTORY WITH RESPECT TO THIS MOTION .................................... 1

    C.  THE ASSERTED CLAIMS. ........................................................................... 2

    D.  CLAIM CONSTRUCTION. ............................................................................ 3

        1.  Making the Gain "Substantially Even" or "Substantially Flat." ................ 4

        2.  "Optical Attenuator." ........................................................................ 4

        3.  "Making" ......................................................................................... 4

        4.  "Gain." ............................................................................................ 4

    E.  KNOWLEDGE OF A PERSON OF ORDINARY SKILL IN THE ART AT THE TIME OF THE CLAIMED INVENTION. ....................................................... 4

II.  PATENT INVALIDITY. ...................................................................................... 5

    A.  PATENT INVALIDITY. ................................................................................ 5

        1.  Anticipation Under 35 U.S.C. § 102(e). ............................................. 5

        2.  Obviousness Under 35 U.S.C. § 103(a). ............................................ 6

III.  THE ASSERTED PRIOR ART. ......................................................................... 7

    A.  THE '092 PATENT. .................................................................................... 7

    B.  THE JULY 1995 SUGAYA ARTICLE. .......................................................... 7

    C.  THE '874 PATENT. .................................................................................... 9

IV.  ARGUMENT. ..................................................................................................... 9

    A.  THE '092 PATENT ANTICIPATES THE ASSERTED CLAIMS OF THE '681 PATENT. ................................................................................................... 9

        1.  Claim 6 is Anticipated by the '092 Patent. ....................................... 10

            a.  The '092 Patent Discloses an "Optical Amplifier Which Amplifies a wavelength Division Multiplexed (WDM) Optical Signal Having a Variable Number of Channels Associated with Different Wavelengths with a Gain and Outputs the Amplified WDM Optical Signal." ........................... 11

            b.  The '092 Patent Discloses an "Optical Attenuator Which Controls a Level of the Amplified WDM Optical Signal." .......... 12

            c.  The '092 Patent Discloses an "Optical Filter which Makes the Gain Substantially Even With Respect to Said Different Wavelengths." ............................................................................ 14

d. The '092 Patent Discloses a "Controller which Controls the Gain to be Approximately Constant." ........................................... 17

2. Claim 7 is Anticipated by the '092 Patent. ................................. 18

a. The '092 Patent Discloses a "Controller which Controls the Gain to be Approximately Constant During Variation of the Number of Channels in the WDM Optical Signal." ..................... 18

3. Claim 8 is Anticipated by the '092 Patent. ................................. 19

a. The '092 Patent Discloses an Optical Attenuator, "Wherein an Attenuation Level of the Optical Attenuator is Changed to Control the Level of the Amplified WDM Optical Signal." ........................................................................................ 19

B. CLAIMS 6 – 8 ARE OBVIOUS UNDER 35 U.S.C. § 103 IN VIEW OF THE JULY 1995 SUGAYA ARTICLE IN COMBINATION WITH THE '874 PATENT. ....................... 20

1. Claim 6 is Obvious in View of the July 1995 Sugaya Article and the '874 Patent. ...................................................................... 21

a. The July 1995 Sugaya Article Discloses an "Optical Amplifier Which Amplifies a wavelength Division Multiplexed (WDM) Optical Signal Having a Variable Number of Channels Associated with Different Wavelengths with a Gain and Outputs the Amplified WDM Optical Signal." ........................................................................ 21

b. The July 1995 Sugaya Article Discloses an "Optical Attenuator Which Controls a Level of the Amplified WDM Optical Signal." ........................................................................ 25

c. The July 1995 Sugaya Article The Prior Art Discloses a "Controller which Controls the Gain to be Approximately Constant." .................................................................................. 26

d. The '874 Patent Discloses an "Optical Filter Which Makes The Gain Substantially Even With Respect To Said Different Wavelengths." ............................................................. 27

e. One of Ordinary Skill in the Art Would Be Motivated to Combine the Teachings of the July 1995 Sugaya Article with those of the '874 Patent. ....................................... 29

f. Combining the July 1995 Sugaya Article with the '874 Patent Would Have Predictable Results. ...................................... 30

2. Claim 7 is Obvious in View of the July 1995 Sugaya Article and the '874 Patent. ...................................................................... 31

3. Claim 8 is Obvious in View of the July 1995 Sugaya Article and the '874 Patent. ...................................................................... 32

V. CONCLUSION ............................................................................................. 33

Pursuant to Federal Rule of Civil Procedure 50(b), Defendants Tellabs, Inc., Tellabs Operations, Inc. and Tellabs North America, Inc. (collectively, "Tellabs Defendants") hereby renew their motion that the Court to grant judgment as a matter of law that claims 6 – 8 of U.S. Patent No. 7,227,681 ("the '681 Patent") are invalid over the prior art as a result of anticipation and/or obviousness. In light of indisputable evidence at trial, Plaintiff has not offered a legally sufficient evidentiary basis for a reasonable jury to find these issues in Plaintiff's favor. The Court should therefore hold as a matter of law that the asserted claims of the '681 Patent are invalid. Fed. R. Civ. P. 50.

## I.   BACKGROUND.

### A.   Judgment as a Matter of Law

Judgment as a matter of law is appropriate as to a particular issue when "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a). "[A] mere scintilla of supporting evidence will not suffice." *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1173 (7th Cir. 2002) (quotation omitted). In deciding a motion for judgment as a matter of law, "the court should review all of the evidence in the record" and "should give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000) (quotations omitted).

### B.   Case History with Respect to this Motion

On January 6, 2012, the Tellabs Defendants filed their Motion for Summary Judgment of Invalidity of U.S. Patent No. 7,227,681 [Dkt. 444], arguing that each of the asserted claims of the '681 Patent is "invalid over the prior art as a result of anticipation and/or obviousness." Dkt. No. 444 at 2. Specifically, the Tellabs Defendants argued, *inter alia,* that U.S. Patent No. 6,055,092

("the '092 Patent") is prior art that anticipates the asserted claims of the '681 Patent under 35 U.S.C. § 102.  *See,* Joint Ex. 134.

On July 27, 2012, this Court denied that motion "in light of disputed questions of material fact regarding the date when the invention disclosed by the '681 Patent was reduced to practice."  However, on August 16, 2012, this Court determined that Fujitsu Limited may not present any evidence of a conception or priority date earlier than April 28, 1997.  Mem. and Order dated 8/16/12 [Dkt. 891].  This ruling removed any fact dispute regarding whether the anticipating '092 Patent is prior art.

**C.    The Asserted Claims.**

At trial, Fujitsu Limited asserted that the Tellabs MIAM product infringed claims 6 – 8 of the '681 Patent.  Joint Ex. 2000.  The asserted claims of the '681 Patent are directed to the structure of an optical amplification system.  The asserted claims read as follows:

> 6. An apparatus comprising: an optical amplifier which amplifies a wavelength division multiplexed (WDM) optical signal having a variable number of channels associated with different wavelengths with a gain and outputs the amplified WDM optical signal, the optical amplifier including:
>> an optical attenuator which controls a level of the amplified WDM optical signal,
>> an optical filter making the gain substantially even with respect to said different wavelengths, and
>> a controller which controls the gain to be approximately constant.
>
> 7. An apparatus as in claim 6, wherein the controller controls the gain to be approximately constant during variation of the number of channels in the WDM optical signal.
>
> 8. An apparatus as in claim 6, wherein an attenuation level of the optical attenuator is changed to control the level of the amplified WDM optical signal.

As established at trial by named inventor Yasushi Sugaya, **the only differences** between Figure 2 (representing the prior art) and Figure 3 (the embodiment of the '681 Patent) are the monitor signal processing circuit 70 and a photodiode 584 used to provide a warning signal to

monitor signal processing circuit 70. Transcript of Proceedings – Trial ("Trial Tr.") at 643:7 –

645:1 (cited portions of the trial transcript are attached to the Declaration of Kelley Conaty in

Support of Tellabs' Motion for Judgment as a Matter of Law on Invalidity of U.S. Patent No.

7,227,681 as Exhibit A).



**Joint Ex. 2000, Figures 2 and 3 from the '681 Patent (with annotations)**

Despite the fact that there is <u>no</u> embodiment disclosed in the '681 Patent that does not

include a monitor processing circuit, Dr. Willner and Mr. Sugaya repeatedly asserted that the

asserted claims of the '681 Patent do not require this monitor processing circuit. *See, e.g.,*

Trial Tr. at 433:18 – 21; 555:24 – 556:12; 572:7 – 9; 572:16 – 18; 1288:9 – 14; 1288:22 –

1289:10; 1312:5 – 12. As such, the asserted claims simply reflect the prior art and are

invalid as anticipated.

### D. Claim Construction.

In its Memorandum Opinion and Order, the Court construed two claim terms from the

'681 Patent related to the term gain, including "substantially even" (and "substantially flat"), as

well as "optical attenuator." The Court has also recently construed the term "making" and

clarified that the term "gain" is to be given its ordinary meaning.

1. **Making the Gain "Substantially Even" or "Substantially Flat."**

This Court construed the claim terms "substantially even" to mean "largely, but not wholly flat/even." Court Exhibit 1; Memorandum Opinion and Order, Case No. 1:08-cv-3379, [Dkt. No. 427], dated 9/29/11 at 79-80 ("Claim Construction Order"). The full claim limitation, as found in claim 6, is "an optical filter making the gain substantially even with respect to said different wavelengths."

2. **"Optical Attenuator."**

This Court construed the claim term "optical attenuator" to mean "a device having variable optical transmissivity." Claim Construction Order at 83. This construction applies to the term as it appears in claims 6 and 8. Court Exhibit 1; Claim Construction Order at 87 – 89.

3. **"Making"**

This Court recently construed the claim term "making," as it appears in claim 6, to mean "which makes." Court Exhibit 1; Order [Dkt. No. 824] (Case: 1:09-cv-04530), dated 8/8/12.

4. **"Gain."**

This Court likewise recently clarified that the term "gain" as it appears in asserted claims 6 and 7 should be given its ordinary meaning to a person of skill in the art. Court Exhibit 1; Order [Dkt. No. 784 (Case: 1:09-cv-04530), dated 7/27/2012. Gain is a measure of the amount of power an optical amplifier provides to an optical signal. *Id.*

E. **Knowledge of a Person of Ordinary Skill in the Art at the Time of the Claimed Invention.**

The Court has defined a person of ordinary skill in the art at the time the invention claimed in the '681 Patent was made to be a person having "at least a Master's degree in electrical engineering or physics and two to five years of experience in the field of optical fiber

4

transmission systems and the components for such systems."  Claim Construction Order at 53 – 54.

Before the time of the invention claimed in the '681 Patent, a person of ordinary skill in the art would have known, *inter alia*, the teachings, principles, structures, methods, and applications regarding optical amplifiers as disclosed in the '681 Patent and in the references cited in the '681 Patent.  In particular, a person of ordinary skill in the art would have known that an optical fiber transmission system inherently adds and drops wavelength channels from the wavelength division multiplexed ("WDM") optical signal at a node in the system.  *See,* Final Pretrial Order, Case: 1:09-cv-04530, Exhibit A [Dkt. No. 908-1] at Fact 8 (page 2).

## II.  PATENT INVALIDITY.

### A.  Patent Invalidity.

A patent is presumed valid under 35 U.S.C. § 282, but that presumption can be overcome with evidence of anticipation under 35 U.S.C. § 102 or evidence of obviousness under 35 U.S.C. § 103.  *See, e.g., KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 426 (2007).  The presumption of validity is more easily overcome when the United States Patent and Trademark Office ("USPTO") did not consider a highly relevant prior art reference.  *See Ryco, Inc. v. Ag-Bag Corp.,* 857 F.2d 1418, 1423 (Fed. Cir. 1988).

### 1.  Anticipation Under 35 U.S.C. § 102(e).

A patent claim is anticipated under the provisions of 35 U.S.C. § 102 when (1) a single prior art reference discloses every element in the claim, either explicitly or inherently and (2) a person of ordinary skill in the field of the invention, looking at the single prior art item, would be able to make and use the invention disclosed in the claim.  *See,* Final Jury Instructions, dated 9/5/2012, at 8.

Anticipation occurs under 35 U.S.C. § 102(e) when the claimed invention was described

in an issued U.S. patent that was based on a patent application filed before date of the invention, which was April 28, 1997.  35 U.S.C. § 102(e).

### 2. Obviousness Under 35 U.S.C. § 103(a).

Even when all elements of a claim are not disclosed in a single prior art reference, that claim may still be invalid under 35 U.S.C. § 103(a) if a person of ordinary skill in the field of the invention, who knew about all the prior art existing at the time of the invention (April 28, 1997), would have considered the invention obvious at that time.  Unlike anticipation, obviousness may be shown by considering two or more items of prior art in combination.  *See,* Final Jury Instructions, dated 9/5/2012, at 8.

The obviousness analysis for § 103 includes the following underlying inquiries: (1) the scope and content of the prior art; (2) the differences between the claims and the prior art; and (3) the level of ordinary skill in the pertinent art.  *See,* Final Jury Instructions, dated 9/5/2012, at 9.  Additionally, prior art may only be combined if there was an apparent reason for a person of ordinary skill in the field to combine them in the same way as in the invention claimed in a particular claim of the '681 Patent.  In deciding this, one may consider, among other things, any of the following factors:

1)        what the prior art suggests about combining;

2)        the knowledge possessed by persons with ordinary skill in the field of the invention; and

3)        the effects of market pressures and design needs that existed at the time, and the number of identified and predictable solutions for those demands.

*See,* Final Jury Instructions, dated 9/5/2012, at 9.

III.     **The Asserted Prior Art.**

A.     **The '092 Patent.**

United States Patent No. 6,055,092 is admitted prior art that anticipates the '681 Patent under 35 U.S.C. 102(e).  *See,* Joint Ex. 134.  In other words, the invention claimed by the '681 Patent was described in a patent granted on an application for patent (the '092 Patent), by another (Yasushi Sugaya, Miki Takeda, Susumu Kinoshita, and Terumi Chikama), filed in the United States before the invention by the applicant for patent.  *See*, Joint Ex. 134.  The '092 Patent was filed on May 28, 1996 and names Messrs. Sugaya and Kinoshita as inventors, but, as it also lists Ms. Takeda and Mr. Chikama, it is considered to be an invention "by another."[1]  The parties have stipulated that the '092 Patent is prior art to the '681 Patent.  Final Pretrial Order, Case: 1:09-cv-04530, Exhibit A [Dkt. No. 908-1] at Fact 17 (page 3).

The '092 Patent discloses the apparatus and operation of an optical amplifier that amplifies a wavelength division multiplexed (WDM) optical signal and describes it with the following components: an optical attenuator, an optical filter, and a controller.  Joint Ex. 134.  In addition, the '092 Patent discloses other variations to the structure, such as, utilizing first and second stage optical amplifiers.  Joint Ex. 134.

B.     **The July 1995 Sugaya Article.**

The article *Configuration Design of Multi-Wavelength Er-Doped Fiber Amplifier for WDM Transmission System*, by Messrs. Sugaya, Kinoshita, and Chikama and published by the Institute of Electronics, Information and Communication Engineers Technical Report of IEICE OCS95-36 (1995-07) ("July 1995 Sugaya Article") is prior art that renders the asserted claims of the '681 Patent obvious under 35 U.S.C. § 103.  *See,* DX 031.  The article was published in July

---

[1] MPEP 706.02(a) ("Note that, where there are joint inventors, only one inventor needs to be different for the inventive entities to be different and a rejection under 35 U.S.C. 102(e) is applicable even if there are some inventors in common between the application and the reference.").

of 1995. DX 031; *see also,* Trial Tr. at 693:6 – 14. Therefore, the July 1995 Sugaya Article is a publication dated prior to the date of the claimed '681 Patent invention or more than one year before the first U.S. patent application was filed on April 28, 1997, and it is prior art to the '681 Patent.

The July 1995 Sugaya Article was not listed on the face of the '681 Patent and thus was not before the examiner at the U.S. Patent and Trademark Office. Trial Tr. at 1029:13 – 20; 1295:1 – 19; 1319:17 – 1320:1. The article similarly discloses the apparatus and operation of an optical amplifier that amplifies a WDM optical signal and describes it with the following components: an optical attenuator, an optical filter, and a controller. DX 031.



**DX 031, Figures 5 and 6 from July 1995 Sugaya Article (with annotations)**

C.      **The '874 Patent.**

United States Patent No. 5,083,874, entitled "Optical Repeater and Optical Network Using the Same," is prior art that renders the '681 Patent obvious under 35 U.S.C. § 103.  *See,* DX029.  The patent is clearly prior art to the '681 Patent, as it is an invention patented by another (Messrs. Aida; Nishi; Saruwatari; and Nakagawa) before the date of the invention (January 28, 1992) or more than one year before the first U.S. patent application was filed on April 28, 1997.  *Id.*  The '874 Patent is indisputably prior art to the '681 Patent.  *See also,* Trial Tr. at 972:22 – 973:3.

The '874 Patent was likewise not listed on the face of the '681 Patent, and thus was not before the examiner at the U.S. Patent and Trademark Office.  The '874 Patent discloses, among other things, the use of an optical filter to solve the problem of uneven gains and losses between multiple wavelengths in an optical signal so that the sum of the gains and the losses becomes constant or even.  *See,* DX029 at 12:56-64.

IV.      **ARGUMENT.**

A.      **The '092 Patent Anticipates the Asserted Claims of the '681 Patent.**

As established at trial, the '092 Patent anticipates the asserted claims 6 – 8 of the '681 Patent.  Trial Tr. at 935:14 - 23.  No evidence exists that any requirements of the asserted claims is not expressly stated or inherently present in the '092 Patent.  In fact, every element of the asserted claims of the '681 Patent is found in the '092 Patent.  *See, e.g.,* annotated Figure 3 below.

Further, a person of ordinary skill in the field of the invention, looking at the '092 Patent, would indisputably be able to make and use the invention disclosed in the claim.  Trial Tr. at 937:8 – 938:3.  As an issued patent, the '092 Patent enjoys a presumption of validity under 35 U.S.C. § 282, including enablement of the described invention.

9

**1.      Claim 6 is Anticipated by the '092 Patent.**

Every element of claim 6 can be found in the '092 Patent, Joint Ex. 134.  As such, claim 6 is invalid as anticipated.  *See,* Trial Tr. at 935:14 – 23.

Several key elements of a two-stage optical amplifier claimed by the '681 Patent are identified in annotated Figure 17 from the patent as shown below.  As seen below, the '092 Patent discloses a multi-wavelength light amplifier, which is clearly an "apparatus," as required by claim 6.  Joint Ex. 134 at title; Trial Tr. at 879:20 – 880:2.



Joint Ex. 2000, the '681 Patent Figure 17 (annotated).

The analogous features are marked on annotated Figure 3 of the '092 Patent shown below.



Joint Ex. 134. '092 Patent Figure 3 (annotated).

>    a.    *The '092 Patent Discloses an "Optical Amplifier Which Amplifies a wavelength Division Multiplexed (WDM) Optical Signal Having a Variable Number of Channels Associated with Different Wavelengths with a Gain and Outputs the Amplified WDM Optical Signal."*

The '092 Patent discloses an optical amplifier that amplifies the transmitted WDM optical signal with a gain and outputs the amplified WDM optical signal, as shown in annotated Figure 3 from Joint Ex. 134 below.  Trial Tr. at 655:5 – 16; 880:3 – 883:2; 925:18 – 926:2; 926:11 – 927:10.  *See also,* Joint Ex. 134 at field [57], 1:46-50, 7:62 – 8:51, Figs. 3, 5, claims 1, 3, 9, 13, 17, 27.  The '092 Patent discloses that the optical amplifier outputs the amplified WDM optical signal.  Trial Tr. at 926:21 – 927:10; Joint Ex. 134 at 1:46-50; Fig. 3.



Joint Ex. 134.  The '092 Patent Figure 3 (annotated).

The '092 Patent further discloses an optical signal that is a WDM optical signal comprising a plurality of channels associated with different wavelengths.  Trial Tr. at 924:2 – 25; Joint Ex. 134 at 1:24-27, Figs. 2, 4, 6  The number of channels in the WDM optical signal will inherently vary as channels are added or dropped by the optical transmission system.  *See,* DX 025; Trial Tr. at 880:11 – 881:14; 882:14 – 883:2; 1156:8 – 1157:1.  This was confirmed by the USPTO examiner for both the '681 Patent and its divisional, U.S. Patent Application No. 11/742,508 ("the '508 Application"), in issuing a 35 U.S.C. § 102(a) rejection of the '508 Application, stating with respect to the '092 Patent that "the number of channels is inherently variable because channels are inherently dropped."  DX025; Trial Tr. at 922:4 – 23 (Fujitsu Limited did not dispute the Examiner's statement); 923:7 – 15; 1156:18 – 1157:1.

> b.    *The '092 Patent Discloses an "Optical Attenuator Which Controls a Level of the Amplified WDM Optical Signal."*

The '092 Patent discloses an optical attenuator (variable attenuator, element 11) as shown below in annotated Figure 3 from the '092 Patent.  Trial Tr. at 927:15 – 24; Joint Ex. 134 at

5:16-30, 11:22-47, 13:35-56, 13:66 – 14:12, Figs. 1, 3, 5, 8-15, claims 1-2, 4-6, 9-10, 18, 21, 23, 27.



Joint Ex. 134.  The '092 Patent Figure 3 (annotated).

The '092 Patent further describes the optical attenuator as follows:

> The optical system which maintains the second light output of the second-stage light amplifier at a constant power level comprises <u>a variable attenuator</u> [element 11] which is provided between the first-stage light amplifier and the second-stage light amplifier and attenuates the first output signal on the basis of the power level of the second light output. …[or] <u>a variable attenuator</u> [element 11] which is provided so as to follow the second-stage light amplifier and attenuates the second output signal on the basis of the power level of an attenuated second light output from the variable attenuator. …[or] <u>a variable attenuator</u> [element 11] which is provided between the first-stage light amplifier and the second-stage light amplifier and attenuates the first output signal on the basis of the power level of an attenuated first light output from the variable attenuator.

Joint Ex. 134 at 3:64 – 4:20 (emphasis added).

The '092 Patent discloses the optical attenuator (element 11) is controlled by an automatic level control (ALC) circuit (element 14).  Trial Tr. at 927:15 – 24; Joint Ex. 134 at 5:17-30, 6:26-40, 13:48-56, 13:66 – 14:12, Figs. 1, 3, 5, 8-15, claims 1, 3-6, 9, 13-15, 17-20, 22, 25-27.  The '092 Patent further discloses that this ALC circuit changes the attenuation level of

13

the optical attenuator (element 11), i.e., its transmissivity, to control the level of the amplified WDM optical signal. Trial Tr. at 927:15 – 24; Joint Ex. 134 at 8:47-51, 9:42-46, 11:27-39, 12:21-24, 12:61-64, 13:36-39, 13:48-56, claims 1-2, 5, 9, 18, 27.

> The [electrical signal corresponding to the light level from the second stage] is applied to the variable attenuator 11, and the amount of attenuation caused therein is varied on the basis of the light level detected by the photodiode 13.

Joint Ex. 134 at 6:26-40.

"In short, the variable attenuator 11 maintains the level of the output light of the second-stage amplifier 1 at the predetermined constant level." Joint Ex. 134 at 8:47-51. Further, such an optical attenuator is claimed in the '092 Patent – for example:

> 1. …an attenuator positioned between the first-stage optical amplifier and the second-stage optical amplifier, to attenuate the power level of the first-stage amplified light and thereby control a power level of the second-stage amplified light.

Joint Ex. 134 at claims 1, 3-6, 9, 13-15, 17-20, 22, 25-27.

> c. *The '092 Patent Discloses an "Optical Filter which Makes the Gain Substantially Even With Respect to Said Different Wavelengths."*

The '092 Patent discloses an optical filter (element 15) as shown below in annotated Figure 3 from the '092 Patent. Trial Tr. at 927:25 – 928:6; 928:10 – 20; 929:6 – 931:6; 931:17 – 23; Joint Ex. 134 at 8:19-46, 9:8-29, 9:47-53, Figs. 3, 5. *See also,* Final Pretrial Order, Case: 1:09-cv-04530, Exhibit A [Dkt. No. 908-1] at Fact 25 (page 3).

14



Joint Ex. 134. The '092 Patent Figure 3 (annotated).

The corresponding description of the optical filter (element 15) discloses that the optical filter makes the gain substantially flat or even with respect to wavelength:

> The optical filter compensates for the difference between the first and second linear gain slopes <u>so that a flat gain vs wavelength characteristic of the multi-wavelength light amplifier can be obtained</u>.

Joint Ex. 134 at 2:51-55 (emphasis added).

The '092 Patent discloses that the optical filter (element 15) makes the gain "G" substantially flat (or even) with respect to the different wavelengths, as shown below in annotated Figure 4 of the '092 Patent. Trial Tr. at 929:6 – 19; Joint Ex. 134 at 8:19-29; 9:8-29; 9:47-53; Figs. 4, 6. Figure 4 illustrates the wavelength characteristics of various elements within the disclosed optical amplifier.



Joint Ex. 134, the '092 Patent Figure 4 (annotated).

From left to right, corresponding to (a) to (d), the curves illustrate: (a) the gain characteristic of the first stage amplifier (element 1), (b) the gain characteristic of the first stage amplifier and the optical filter (element 15) combined, (c) the gain characteristic of the second stage amplifier, and (d), the net or overall gain characteristic of the optical amplifier, including both optical amplifier stages and the optical filter. *See,* Trial Tr. at 929:6 – 19; Joint Ex. 134 at 8:4-14. Comparing the gain characteristic of just the first and second amplifier stages, the net gain characteristic of the optical amplifier would not be flat without the optical filter. Thus, as clearly shown in Figure 4(d), it is only through use of an optical filter that makes the gain substantially even with respect to different wavelengths, that the desired even or flat gain characteristic is achieved. Trial Tr. at 929:6 – 19.

There can be no doubt that the '092 Patent discloses an optical filter that makes the gain substantially even or flat. In particular, the '681 Patent specifically incorporates the '092 Patent by reference for its disclosure of a filter "for correcting wavelength dependency of the gain." Joint Ex. 2000 at 16:42-45; Trial Tr. at 711:21 – 713:17; 929:20 – 931:23.

> d.   The '092 Patent Discloses a "Controller which Controls the Gain to be Approximately Constant."

The '092 Patent discloses a controller (automatic gain control ("AGC") circuit, elements $6_1$ and/or $6_2$) as shown below in annotated Figure 3 of the '092 Patent.  Trial Tr. at 655:17 – 656:2; 933:1 – 7; 933:21 – 934:13; 934:19 – 935:13; Joint Ex. 134 at 2:56 – 3:47, 5:31-60, 11:66 – 12:20, 12:33-60, 13:5-34, Figs. 1, 3, 5, 8-15.



Joint Ex. 134, the '092 Patent Figure 3 (annotated).

The controller (AGC circuit, elements $6_1$ and/or $6_2$) controls the gain to be approximately constant and operates as follows:

> The first-stage light amplifier has a first AGC (automatic gain control) system so that a ratio of the input light and the first light output is constant. The second stage light amplifier has a second AGC system so that a ratio of the first light output and the second light output is constant.

Joint Ex. 134 at 2:57-62; *see also*, 1:47 – 50;  2:64-66, 3:4-6, 3:11-21, 12:3-9, 12:14-20, 12:40-46, 12:55-60, 13:13-19, 13:28-35; Trial Tr. at 933:21 – 934:13; 934:19 – 935:13.

Because the controller disclosed in the '092 Patent keeps the ratio of the output light power level to the input light power level constant, this disclosed controller inherently controls

the gain to be approximately constant during variation of the number of channels in the WDM optical signal. Trial Tr. at 658:10 – 16 and 22 – 25; 933:21 – 934:13; 934:19 – 935:13. In other words, the disclosed controller does not simply stop keeping the ratio of the output light power level to the input light power level approximately constant because the magnitude of the input light power level changes, e.g., during variation of the number of channels in a WDM signal. In fact, a stated object of the invention of the '092 Patent is "to provide a multi-wavelength light amplifier which does not have wavelength-dependence of the gain, which is <u>not</u> changed due to a <u>variation</u> in the <u>power</u> of the <u>input</u> light." Joint Ex. 134 at 1:47-50 (emphasis added). One source of variation in the power level of the input light would be a variation in the number of channels in the WDM optical signal. Trial Tr. at 658:10 – 16 and 22 – 25; 934:19 – 935:13. Thus, the '092 Patent discloses not only a controller "which controls the gain to be approximately constant," but also one that "controls the gain to be approximately constant during variation of the number of channels in the WDM optical signal." *See,* Trial Tr. at 655:23 – 656:19; 934:19 – 935:13.

Every element of claim 6 of the '681 Patent is found in the '092 patent. Trial Tr. at 935:14 – 23. Claim 6 is therefore invalid as anticipated by the '092 Patent. No reasonable jury could find otherwise, and judgment as a matter of law is appropriate.

### 2. Claim 7 is Anticipated by the '092 Patent.

*a.* *The '092 Patent Discloses a "Controller which Controls the Gain to be Approximately Constant During Variation of the Number of Channels in the WDM Optical Signal."*

Claim 7 is likewise anticipated by the '092 Patent. Trial Tr. at 936:3 – 16. As noted above, the '092 Patent discloses a controller that controls the gain to be approximately constant. Joint Ex. 134 at 2:57-62; *see also*, 1:47 – 50;  2:64-66, 3:4-6, 3:11-21, 12:3-9, 12:14-20, 12:40-46, 12:55-60, 13:13-19, 13:28-35; Trial Tr. at 933:21 – 934:13; 934:19 – 935:13. Further,

because the controller disclosed in the '092 Patent keeps the ratio of the output light power level to the input light power level constant, this disclosed controller inherently controls the gain to be approximately constant during variation of the number of channels in the WDM optical signal. Trial Tr. at 658:10 – 16 and 22 – 25; 933:21 – 934:13; 934:19 – 935:13; Joint Ex. 134 at 1:47-50 Thus, the '092 Patent discloses a controller that "controls the gain to be approximately constant during variation of the number of channels in the WDM optical signal." *See,* Trial Tr. at 655:23 – 656:19; 934:19 – 935:13; 936:3 – 16.

Every element of claim 7 of the '681 Patent is therefore found in the '092 Patent. Trial Tr. at 936:3 - 16. Claim 7 is invalid as anticipated by the '092 Patent, and because no reasonable jury could find otherwise, judgment as a matter of law is appropriate.

### 3. Claim 8 is Anticipated by the '092 Patent.

#### a. *The '092 Patent Discloses an Optical Attenuator, "Wherein an Attenuation Level of the Optical Attenuator is Changed to Control the Level of the Amplified WDM Optical Signal."*

As established at trial, claim 8 is anticipated by the '092 Patent. Trial Tr. at 936:17 - 25. The '092 Patent discloses an optical attenuator (variable attenuator, element 11), with an attenuation level that is changed to control the level of the amplified WDM optical signal. Joint Ex. 134 at 5:16-30, 11:22-47, 13:35-56, 13:66 – 14:12, Figs. 1, 3, 5, 8-15, claims 1-2, 4-6, 9-10, 18, 21, 23, 27. As explained above, the '092 Patent specifically discloses that the ALC circuit changes the attenuation level of the optical attenuator (element 11), i.e., its transmissivity, to control the level of the amplified WDM optical signal. Trial Tr. at 927:15 – 24; Joint Ex. 134 at 8:47-51, 9:42-46, 11:27-39, 12:21-24, 12:61-64, 13:36-39, 13:48-56, claims 1-2, 5, 9, 18, 27.

Every element of claim 8 of the '681 Patent is found in the '092 Patent, and claim 8 is invalid as anticipated by the '092 Patent. Trial Tr. at 936:17 - 25. Judgment as a matter of law of invalidity is appropriate.

In view of the above, each of the asserted claims of the '681 Patent is anticipated by the '092 Patent. Judgment as a matter of law that the '681 Patent is invalid as anticipated by the '092 Patent is therefore appropriate.



**B.    Claims 6 – 8 are Obvious Under 35 U.S.C. § 103 in View of the July 1995 Sugaya Article in Combination with the '874 Patent.**

As established at trial, the July 1995 Sugaya Article discloses every element of asserted claims 6 – 8 of the '681 Patent – other than the "optical filter which makes the gain substantially even with respect to said different wavelengths." At trial, Mr. Sugaya identified the cut-off filter of the July 1995 Sugaya Article as a gain flattening filter. Figure 5 of DX031 – 3236; Trial Tr. at 703:20 – 704:8; 704:1 – 8; 706:16 – 18; 707:13 – 17. However, Dr. Buckman concluded that this "would have been contrary to the understanding somebody of ordinary skill in the art would have about what a cutoff filter does versus what a gain flattening filter does." Trial Tr. at 1027:3 – 11. Dr. Buckman did conclude, however, that the use of a gain flattening filter with the optical

amplifier described by the July 1995 Sugaya Article would have been obvious to one of skill in the art. Specifically, he concluded that the asserted claims are obvious in view of the combination of the July 1995 Sugaya Article (DX031) and the '874 Patent (DX029). Trial Tr. at 973:16 – 23; 975:5 – 21; 1027:12 – 1028:3; *see also*, DX029.

### 1. Claim 6 is Obvious in View of the July 1995 Sugaya Article and the '874 Patent.

*a.* *The July 1995 Sugaya Article Discloses an "Optical Amplifier Which Amplifies a wavelength Division Multiplexed (WDM) Optical Signal Having a Variable Number of Channels Associated with Different Wavelengths with a Gain and Outputs the Amplified WDM Optical Signal."*

Every element of claim 6, other than the optical filter which makes the gain substantially even with respect to said different wavelengths, can be found in the July 1995 Sugaya Article, DX031. As seen below, the July 1995 Sugaya Article discloses erbium-doped fiber amplifiers, which are clearly an "apparatus" as required by claim 6. DX031; Trial Tr. at 939:16 – 23.

The July 1995 Sugaya Article discloses an optical amplifier that amplifies a WDM optical signal with a gain. Trial Tr. at 939:24 – 940: 6; DX031 at abstract; Figs. 1-3, 7, 8, 10. The disclosed optical amplifiers include two Er-doped fiber stages, each of which **provide** power to a WDM optical signal that passes through them, and thus the amplifier amplifies the WDM optical signal with a gain. *See, e.g.,* Trial Tr. at 925:18 – 926:2; 945:5 – 19; 946:5 – 8; 1142:12 – 1143:3. These two Er-doped fiber stages are illustrated in Figures 5 and 6 of the July 1995 Sugaya Article.



DX031; the July 1995 Sugaya Article – Figure 5.



DX031; the July 1995 Sugaya Article – Figure 6 (annotated).

The July 1995 Sugaya Article further discloses a WDM optical signal having a variable number of channels. Figures 7 and 10 (below) show the amplifier being used with both a four channel WDM optical signal as well as a sixteen channel WDM optical signal. *See also,* Fig. 1. Based upon those figures, the number of channels varied during the tests undertaken by the authors. Trial Tr. at 741:3 – 11; 940:7 – 20; 941: 13 – 24; 942:9 – 943:5; 943:21 – 944:3; DX 031 at TLIL0003236 (English: TLIL0003245).

 

DX031, the July 1995 Sugaya Article - Figures 7, 10 (annotated).

Further, the first sentence in Section 3.1 of the article notes the need for optical amplifiers for use in optical communication systems with optical cross connects in which various routes can be selected. As acknowledged by Mr. Sugaya at trial, these optical cross connects can be used to add and drop wavelength channels as needed, thereby varying the number of channels that must be amplified. Trial Tr. at 741:3 – 11; 942:23 – 943:5; 947:2 – 9; 947:13 – 20; 1032:10 – 1033:17; 1157:16 – 1159:16; DX031 at TLIL_0003236 (English: TLIL_0003245).

3. Study of amplifier configurations
3.1 Design of WDM networking light amplification repeater
    In case a multiple wavelength bundle amplification EDFA is used for a WDM network that includes optical cross connect (OXC) systems, particularly, in case it is applied as a repeater, various routes are selected as transmission routes, hence it is necessary to have a repeater which provides a flexible control which functions independently regardless of transmission routes in each relay stage. That is, in addition to flattening the gain, securing of input dynamic ranges against gain flatness and noise reduction that were mentioned previously, the followings are required: (1) control of the output level to be within the range of a nonlinear limit (upper limit) by four (4) wave mixing (FWM), self phase modulation (SPM) etc, and the SNR limit (lower limit) that accompanies ASE accumulation; (2) securing of wide input dynamic ranges with respect to light automatic level control.

DX031, the July 1995 Sugaya Article – Section 3.1 (annotated).

And, as explained above, the number of channels in the WDM optical signal will inherently vary as channels are added or dropped by the optical transmission system. *See,* DX 025; Trial Tr. at 880:11 – 881:14; 882:14 – 883:2; 922:4 – 23; 923:7 – 15.

The July 1995 Sugaya Article further discloses that the channels are "associated with different wavelengths." Trial Tr. at 944:4 – 12; DX031 at abstract; Figs. 1 – 3; 6 – 10. Figure 7 above shows that the four channels each have different wavelengths. DX031 at Fig. 7. Similarly, Figure 10 shows that the sixteen channels each have different wavelengths as well. Trial Tr. at 944:13 - 20; DX031 at Fig. 10; *See also,* abstract; § 3.1 at TLIL_0003236 (English: TLIL_0003245).

Finally, the optical amplifier disclosed in the July 1995 Sugaya Article "outputs the amplified WDM optical signal." Trial Tr. at 947:23 – 948:4; DX031 at abstract; Fig. 1 – 3, 5 – 8, 10. The optical amplifier disclosed in the July 1995 Sugaya Article includes an output terminal through which the optical amplifier outputs the amplified WDM optical signal. Trial Tr. at 948: 5 – 19; *see, e.g.,* DX031 at Fig. 6 (annotated below in red). The July 1995 Sugaya Article therefore clearly discloses each element of this claim limitation.



DX031; the July 1995 Sugaya Article – Figure 6 (annotated).

24

     b. *The July 1995 Sugaya Article Discloses an "Optical Attenuator Which Controls a Level of the Amplified WDM Optical Signal."*

   The July 1995 Sugaya Article discloses an optical attenuator that controls a level of the amplified WDM optical signal.  Trial Tr. at 710:11 – 15; 948:20 – 949:9; 1028:4 – 11; DX031 at abstract; TLIL_0003236, TLIL_0003238 (English: TLIL_0003245 – 47, TLIL_0003251 - 54); Figs. 5, 6.  Specifically, Figure 5 of the July 1995 Sugaya Article illustrates an optical attenuator.  Trial Tr. at 951:4 – 11; 1028:4 – 11; DX031 at Fig. 5 (annotated below in blue); *see also,* Fig. 6.



DX031; the July 1995 Sugaya Article – Figure 5 (annotated).

   The article further discloses that the optical attenuator is controlled by an automatic level control ("ALC") circuit.  DX031 at abstract; TLIL_0003236 (English: TLIL_0003245 – 47); Fig. 5.  The July 1995 Sugaya Article discloses that the attenuation level of the optical attenuator is changed to control the level of the amplified WDM optical signal.  Trial Tr. at 710:11 – 15; 948:20 – 949:9; DX031 at abstract; TLIL_0003236 (English: TLIL_0003245 – 47); Figs. 5, 6 (The diagonal line through the box marked "ATT" indicates that the attenuation level of the attenuator can be varied.  Trial Tr. at 949:4 – 9.).

> c.  *The July 1995 Sugaya Article Discloses a "Controller which Controls the Gain to be Approximately Constant."*

The July 1995 Sugaya Article discloses a controller that controls the gain to be approximately constant.  Specifically, as acknowledged by Mr. Sugaya at trial, it discloses an automatic gain control ("AGC") circuit.  Trial Tr. at 707:18 – 24; 709:21 – 25; 951:15 – 952:13; 1028:18 – 1029:3; DX031 at abstract; TLIL_0003235 – 38) (English: TLIL_0003235 – 3254); Fig. 5.  The controller (AGC circuit) controls the gain to be approximately constant.  Trial Tr. at 711:8 – 20; 951:15 – 952: 13; DX031 at abstract; TLIL_003235 - 37 (English TLIL_0003239; TLIL_0003242 – 45; TLIL_0003247 – 51); Fig. 3.



DX031.  The July 1995 Sugaya Article.  Figure 5 (annotated).

The article further describes the function of this controller stating "the 2 stage EDFA executes mean automatic gain control."  DX031 at TLIL0003236 (English: TLIL_0003245).  As discussed above, automatic gain control is a control methodology in which the controller attempts to keep the gain approximately constant regardless of the input power.  Trial Tr. at

711:8 – 20; 951:15 – 952: 13; DX031 at abstract; TLIL_003235 - 37 (English TLIL_0003239; TLIL_0003242 – 45; TLIL_0003247 – 51); Fig. 3.  Further, as noted above with respect to the '092 Patent, an automatic gain control circuit will attempt to keep the gain approximately constant regardless of changes in input power.  Trial Tr. at 658:10 – 16 and 22 – 25; 933:21 – 934:13; 934:19 – 935:13.  As one possible cause of a change in input power is a change in the number of channels, the disclosed controller will control the gain to be approximately constant during variation in the number of channels in a WDM optical signal.  Trial Tr. at 741:3 – 11; 943:23 – 943:5; 947:2 – 9; 947:13 – 20; 952:14 – 23; DX031 at TLIL_0003236 (English: TLIL_0003245).

> d.    The '874 Patent Discloses an "Optical Filter Which Makes The Gain Substantially Even With Respect To Said Different Wavelengths."

As explained by Dr. Buckman, a person of ordinary skill in the art, aware of the '874 Patent disclosures at the time of the '681 Patent invention (April 28, 1997), would have considered the invention obvious at that time.  Trial Tr. at 973:16 – 23; 975:5 – 21; 1027:12 – 1028:3; *see also*, DX029.

Figure 26 of the '874 Patent illustrates an optical amplifier, element 10.  This optical amplifier includes two Er-doped fibers, identified as element 14-1 and 14-2.  Between these two Er-doped fibers is an optical filter, identified as element 32.  Trial Tr. at 975:22 – 976:22; DX029 at Figure 26.  This filter is placed analogously to the placement of the filter in both the '681 Patent and the July 1995 Sugaya Article.  Trial Tr. at 977:3 – 10; 978:6 – 14.



DX029, the '874 Patent, Figure 26 (annotated).

The '874 Patent also discusses the problem that an Er-doped fiber, when amplifying an optical signal with multiple wavelengths, does not provide the same gain to each wavelength. Trial Tr. at 979:5 - 18; DX029 at 12:50 – 64.

In such an instance, if each signal light is amplified intact without adjusting the gain for each wavelength in any optical repeaters, the gains for the respective wavelengths vary more and more largely until the gain for signal light of a certain wavelength exceeds the linear operation range of the optical amplifying element, making normal signal light transmission infeasible. To avoid this, an optical filter which has a desired transmission characteristic of signal light of each wavelength is used as each of the optical filters 32₁ and 32₂ in FIG. 25 or the optical filter 32 in FIG. 26 so that the sum of the gain of the optical amplifying element for the signal light of each wavelength and the transmission loss of the signal light by the optical signal transmission fiber becomes substantially constant. Another method is to separate

DX029, the '874 Patent at 12:50 – 64 (annotated).

To solve the problem of uneven gains and losses, the '874 Patent discloses the use of an optical filter so that the sum of the gains and the losses becomes constant or even with respect to

the wavelengths in the optical signal.  Trial Tr. at 979:19 – 980:6; DX029 at 12:50 – 64 (above).

Thus, the '874 Patent discloses that optical filter element 32 is in fact "an optical filter which

makes the gain substantially even with respect to said different wavelengths."  Trial Tr. at 980:10

– 16.

> *e.  One of Ordinary Skill in the Art Would Be Motivated to Combine
> the Teachings of the July 1995 Sugaya Article with those of the
> '874 Patent.*

At trial, Dr. Buckman explained that a person of ordinary skill in the art would recognize

that the July 1995 Sugaya Article discloses the problem of gain tilt due to the uneven gain of the

Er-doped optical fiber.  Trial Tr. at 983:7 – 985:11.  The problem with gain tilt is illustrated in

Figure 1 of July 1995 Sugaya Article.



DX031; the July 1995 Sugaya Article – Figure 1 (annotated).

As reflected in the '874 Patent, one solution to this problem of gain tilt, which would have been

known to a person of skill in the art, would be the use of an optical filter to make the gain even

or flat with respect to wavelength. Trial Tr. at 983:7 – 985:11. As reflected in the '874 Patent, one solution to this problem of gain tilt, which would have been known to a person of skill in the art, would be the use of an optical filter to make the gain even or flat with respect to wavelength. Trial Tr. at 983:7 – 985:11. As noted by Dr. Buckman at trial, one of skill in the art would have been motivated to employ the gain-flattening filter from the '874 Patent with the July 1995 Sugaya article in order to achieve a gain that is flat with respect to wavelength. *Id.* As also noted by Dr. Buckman, rather than adjusting the gain of the fibers as shown in Figure 1 of the July 1995 Sugaya Article, which necessitates the use of a lower gain, one of skill in art would understand that the use of the '874 Patent gain-flattening filter would not only allow one of skill in the art to address the uneven gain with respect to wavelength but would also allow operation of the amplifier at a higher gain. *Id.* The ability to operate the optical amplifiers at higher gain levels provides more power to the signal as it propagates over a long span, allowing longer distances between amplifiers simply because the first amplifier provided the optical signal more power. *Id.* This ability to move amplifiers further apart reduces costs. *Id.* It is therefore clear that one of ordinary skill in the art would be motivated to combine the teachings of the July 1995 Sugaya article with those of the '874 Patent.

> f.    *Combining the July 1995 Sugaya Article with the '874 Patent Would Have Predictable Results.*

Dr. Buckman explained at trial that the results of this combination would be predictable. Trial Tr. at 985:12 – 20. According to this Court, a person of skill in the art would have at least a master's degree and up to five years experience. With this level of education and experience, a person of skill in the art would readily predict that the addition of the optical filter disclosed in the '874 Patent would permit tuning of the gain provided by the optical amplifier disclosed in the July 1995 Sugaya Article. Trial Tr. at 983:7 – 985:11. Further, a person of skill in the art would

understand the need for, and be able to predict the result of, adding the filter disclosed in the '874 Patent to the optical amplifier disclosed in July 1995 Sugaya Article. This combination of the July 1995 Sugaya Article with the '874 Patent would therefore indisputably disclose each element of asserted claim 6 of the '681 Patent and render the claim obvious. Trial Tr. at 985:21 – 986:2; 987:3 – 988:8.

The July 1995 Sugaya Article, in combination with the '874 Patent, discloses every element of asserted claims 6 – 8 of the '681 Patent. The use of a gain flattening filter with the optical amplifier described by the July 1995 Sugaya Article would have been obvious to one of skill in the art. Trial Tr. at 973:16 – 23; 975:5 – 21; 1027:12 – 1028:3; *see also*, DX029. Claim 6 is therefore obvious in view of the combination of the July 1995 Sugaya Article (DX031) and the '874 Patent (DX029), and judgment as a matter of law is appropriate.

### 2. Claim 7 is Obvious in View of the July 1995 Sugaya Article and the '874 Patent.

The July 1995 Sugaya Article discloses a "controller which controls the gain to be approximately constant during variation of the number of channels in the WDM optical signal." As noted above, an automatic gain control circuit will attempt to keep the gain approximately constant regardless of changes in input power. Trial Tr. at 658:10 – 16 and 22 – 25; 707:18 – 24; 709:21 – 25; 711:8 – 20; 933:21 – 934:13; 934:19 – 935:13; 951:15 – 952:13. As one possible cause of a change in input power is a change in the number of channels, the disclosed controller will control the gain to be approximately constant during variation in the number of channels in a WDM optical signal. Trial Tr. at 741:3 – 11; 943:23 – 943:5; 947:2 – 9; 947:13 – 20; 952:14 – 23; DX031 at TLIL_0003236 (English: TLIL_0003245). Therefore, it is clear that the disclosed controller in the July 1995 Sugaya Article will control the gain to be approximately constant during variation in the number of channels in a WDM optical signal.

Every additional element of claim 7 of the '681 Patent is found in the July 1995 Sugaya Article. Claim 7 is therefore invalid as obvious in view of the combination of the July 1995 Sugaya Article and the '874 Patent. Because no reasonable jury could find otherwise, judgment as a matter of law is appropriate.

### 3. Claim 8 is Obvious in View of the July 1995 Sugaya Article and the '874 Patent.

The July 1995 Sugaya Article discloses an optical attenuator, "wherein an attenuation level of the optical attenuator is changed to control the level of the amplified WDM optical signal." As noted above, the July 1995 Sugaya Article discloses an optical attenuator that controls a level of the amplified WDM optical signal. Trial Tr. at 710:11 – 15; 948:20 – 949:9; 1028:4 – 11; DX031 at abstract; TLIL_0003236, TLIL_0003238 (English: TLIL_0003245 – 47, TLIL_0003251 - 54); Figs. 5, 6. Specifically, Figure 5 of the July 1995 Sugaya Article (above) illustrates this optical attenuator. Trial Tr. at 951:4 – 11; 1028:4 – 11; DX031 at Fig. 5; *see also,* Fig. 6.

The article further discloses that the optical attenuator is controlled by an automatic level control ("ALC") circuit. DX031 at abstract; TLIL_0003236 (English: TLIL_0003245 – 47); Fig. 5. The July 1995 Sugaya Article discloses that the attenuation level of the optical attenuator is changed to control the level of the amplified WDM optical signal. Trial Tr. at 710:11 – 15; 948:20 – 949:9; DX031 at abstract; TLIL_0003236 (English: TLIL_0003245 – 47); Figs. 5, 6 (The diagonal line through the box marked "ATT" indicates that the attenuation level of the attenuator can be varied. Trial Tr. at 949:4 – 9.).

It is therefore clear that every additional element of claim 8 of the '681 Patent is found in the July 1995 Sugaya Article. Claim 8 is therefore invalid as obvious in view of the combination of the July 1995 Sugaya Article (DX031) and the '874 Patent (DX029), and judgment as a matter

of law that each of the asserted claims of the '681 Patent is invalid as obvious is appropriate. Trial Tr. at 985:21 – 986:2; 988:9 – 20; 988:21 – 989:5.

## V.       CONCLUSION.

As shown above, the '092 Patent anticipates claims 6 – 8 of the '681 Patent under 35 U.S.C. § 102(e) and thereby renders those claims invalid.  Further, the July 1995 Sugaya Article, in combination with the '874 Patent, renders claims 6 – 8 of the '681 Patent obvious under 35 U.S.C. § 103.  Judgment as a matter of law is appropriate as no reasonable jury would have a legally sufficient evidentiary basis to find otherwise.

Dated: October 5, 2012                     Respectfully submitted,

                                           /s/ James P. Bradley
                                           David T. Pritikin
                                           Richard A. Cederoth
                                           Richard O'Malley

                                           **SIDLEY AUSTIN LLP**
                                           One South Dearborn Street
                                           Chicago, Illinois  60603
                                           Telephone:  312.853.7000
                                           Facsimile:   312.853.7036

                                           James P. Bradley (admitted pro hac vice)
                                           Texas Bar No. 02826000
                                           Steven C. Malin (*admitted pro hac vice*)
                                           Texas Bar No. 12859750
                                           Mark A. Dodd (admitted pro hac vice)
                                           Texas Bar No. 24040815
                                           Kelley A. Conaty (admitted pro hac vice)
                                           Texas Bar No. 24040716
                                           Kristoffer B. Leftwich (*admitted pro hac vice*)
                                           Texas Bar No. 24046285
                                           Benjamin B. Kelly (*admitted pro hac vice*)
                                           Texas Bar No. 24055765

                                           **SIDLEY AUSTIN LLP**
                                           717 North Harwood
                                           Suite 3400
                                           Dallas, Texas 75201
                                           Telephone:  214.981.3300
                                           Facsimile:   214.981.3400

                                           **ATTORNEYS FOR
                                           TELLABS OPERATIONS, INC., TELLABS INC.,
                                           AND TELLABS NORTH AMERICA**

**<u>Certificate of Service</u>**

I hereby certify that on the 5th day of October, 2012, I caused a copy of the foregoing document to be served on counsel of record in this litigation through the Court's ECF system.

_/s/_     _Kelley Conaty_

Kelley Conaty